## JESSE RAPP ET AL. v. NATIONAL SEC. BANK.

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS
NO 4. OF PHILADELPHIA COUNTY.

Argued April 8, 1890—Decided October 6, 1890.
[To be reported.]

1. When the amount of a check, left with a bank for collection, is credited
   to a depositor as cash, it may be charged back to him in case it turns out to
   be worthless, unless the bank has been negligent, or has done something to
   mislead the depositor into acting, to his injury, on the faith of its good-
   ness : the depositor has no right to be misled by the mere credit of the
   check as cash.

(a) On August 12th, a stranger called on the plaintiffs in Philadelphia, pur-
   chased goods to the amount of $146, and offered in payment a certified
   check on the Merchants' Bank of New York for $900.   Before accepting
   it, the plaintiffs submitted the check to the cashier of the defendant bank,
   who advised them not to take it, for fear it might be "raised."

(b) There was nothing on its face to indicate any alteration, and the cash-
   ier's advice was based simply on the nature of the proposed transaction
   with the stranger.   The cashier further said that the only thing he could
   do for the plaintiffs would be to send the check on for collection and see
   whether it would be paid, and, if it was paid and kept, it might be sup-
   posed all right.

(c) After seeing the stranger and getting his assent, the plaintiffs deposited
   the check to their account with the defendant bank; but, as they did not
   have their pass-book, it was not credited therein on that day.   On August
   14th, the pass-book was brought to the bank, the deposit entered in it,
   and on the same day the plaintiffs paid to the stranger the difference be-
   tween $900 and $146.

(d) The defendant bank sent the check on August 12th to its New York
   correspondent, and it was paid in due course by the Merchants' Bank.
   A month later, in balancing the book of the drawer, the Merchants' Bank
   learned that the check had been altered, before certification, from $7 75
   to $900.   Thereupon the defendant's correspondent returned the $900 to
   the Merchants' Bank, and charged the same against the defendant:

### Statement of Facts.

2. The defendant, having allowed this charge, had the right to charge the check against the plaintiffs' deposit account, each person or bank who had received the money, or a credit, upon the check, being bound to restore it when the fraud was discovered: Clews v. Bank, 89 N. Y. 418; Espy v. Bank, 18 Wall. 619; Bank v. Bank, 55 N. Y. 215, and Natl. Park Bank v. Bank, 114 N. Y. 33, distinguished.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 207 January Term 1890, Sup. Ct.; court below, No. 741 December Term 1885, C. P. No. 4.

On December 22, 1885, Jesse Rapp, Jesse V. H. Rapp and Reuben B. Rapp, trading as Jesse Rapp & Sons, brought assumpsit against the National Security Bank of Philadelphia, to recover a balance alleged to be due to the plaintiffs, as depositors in the defendant bank. The pleas were non-assumpsit, set-off, and payment with leave. Jesse Rapp, Sr., one of the plaintiffs died before trial.

The case was first tried on May 15, 1889, when a verdict was rendered in favor of the plaintiffs for $920, but a rule for a new trial was afterwards made absolute.

At the second trial on October 8, 1889, the following facts were shown :

In August, 1885, the plaintiff firm did business as furniture dealers, and kept a bank account with the defendant. On August 12th a stranger called at the plaintiff's place of business, introduced himself as L. H. Martin, purchased furniture to the amount of $146, and offered in payment for it a certified check for $900 upon the Merchants' National Bank of New York, to the order of L. H. Martin, dated August 3, 1885, and drawn by Woodrow & Lewis. On being told that as he was a stranger the check could not be taken, he suggested that the plaintiffs find out, by telegraphing to the bank, whether it was good or not. Jesse Rapp, Sr., who was the father of the other members of the firm then took the check to the defendant bank, and consulted its cashier, George W. Cox, in regard to it. What took place at the interview with Mr. Cox was thus narrated by the latter, testifying for the defendant:

" On the 12th of August, 1885, Mr. Jesse Rapp, the father, came back into my room at the bank with this check in his

possession, and said, 'I have a check on New York that I would like to know something about.' I said, 'Well, what can I do for you?' He handed me the check. It was then in a very clean condition; much more so than it is now. I said, 'Mr. Rapp, I do not know anything about this check.' He then called my attention to the fact of its being certified. I said, 'That does not amount to anything. I have seen checks that have been altered, the signatures forged, and certificate forged; also the stamp of the depositors forged, put on the back; I have seen that.' I said, 'What is the trouble, Mr. Rapp?' 'Well,' he said, ' I have sold a bill of goods to parties, and they want the difference in cash between the bill and this check.' I said, 'How much is the bill; about what have you sold them?' He hesitated a little while, and said, 'About $150.' Then I said, 'Mr. Rapp, if I were you, from the experience I have had in these matters, I would not touch this check. These men who are going about with raised checks are doing this very thing,—passing altered checks on innocent people, buying a small lot of goods and getting a large amount of money in exchange.' I said to him, 'I do not know that the check is good or not, or that it is properly certified; but if I were in your case I would not take the check or have anything to do with them, unless you know the parties with whom you are dealing.' He said to me, 'I don't know them; they are strangers. They are there to buy the goods, and I would like to sell the goods.' 'Well,' he said, 'what can you do, Mr. Cox?' I said, 'The only thing that I can do in the matter that I know of, if you just leave this check for collection, I will send it to New York to-day with the rest of the checks. If the check is kept, not forged, and not returned, then we will suppose that it is all right. That is all that we can do. If you want to leave this check for collection, take it out to the discount and collection clerk and give it to him.' "

Mr. Rapp then returned to the store and told Martin that he would not be able to find out about the check until August 14th. Martin told him to leave the check with the bank, and he, Martin, would return on the 14th. Mr. Rapp then returned to the defendant's banking house with the check and gave it to Charles H. Wischman, the receiving teller. Wischman testified for the defendant that he had not heard the prior conversation

between Mr. Rapp and the cashier, and did not know what it was about; that Rapp merely presented the check for deposit, and the witness received it as a deposit on account of the firm; that as Rapp did not have the firm's pass-book along with him, the deposit was not credited therein that day, but on August 14th, the pass-book being presented, the witness took the scratcher, found the entry of credit for deposit in that, and entered it in the pass-book; that the custom at the bank, when a depositor came without his pass-book, was to make out a ticket for the deposit, and as soon as he would bring his book and ask to have it entered there, to make such entry; that from this custom, the witness would say that the credit was entered in the pass-book the next time that it was brought to the bank, and without any inquiry as to whether the check had been paid or not, and that the witness would have so entered it on the 12th, if the book had been there.

About three o'clock on the 12th, this and other checks on New York banks were handed to the defendant's cashier, to be forwarded for collection. The cashier sent them by mail to the New York correspondent, the First National Bank, and he subsequently received from the First National Bank an acknowledgment of their receipt, and of a credit for their amount in favor of the defendant bank. The First National Bank, on the morning of August 13th, sent the check of Woodrow & Lewis for collection through the clearing house, and it was paid by the Merchants' National Bank crediting the First National Bank with its amount in the settlement of their balances at the clearing house that day.

On August 14th, Martin returned to the plaintiffs' store and Jesse Rapp paid him $754, the difference between the price of the goods purchased by him and the amount of the check. Whether this payment was made before or after the entry of the credit in the plaintiffs' pass-book, did not appear.

The check remained with the Merchants' National Bank until September 11, 1885, when the deposit account of Woodrow & Lewis with said bank was balanced, and it was thereupon discovered that the check had been "raised." It was originally dated July 28, 1885, and drawn for the sum of $7.75, to the order of Louis Prentice. Between that date and August 4th, it was altered by some one as to its date, amount and

the name of the payee, and on August 4, 1885, when it was presented to the Merchants' National Bank for certification, it was in the same condition as when Rapp & Sons afterward received it. The alterations were so skilfully made that they could not be detected by examination, and there was nothing upon the face of the check to excite any suspicion that it had been tampered with. Accordingly, the paying teller of the Merchants' Bank certified it as requested, and when it was afterward presented through the clearing house it was paid without question.

Upon the discovery of the forgery, the Merchants' Bank credited Woodrow & Lewis again with the amount of the check, returned it to the First National Bank, and asked for and received a corresponding credit from the latter. The First National Bank then charged it up against the defendant and gave notice thereof by telegraph. The telegram was received after bank hours, on September 12th, and the defendant's cashier at once sent it by W. H. McKee, the forwarding clerk, to the place of business of the plaintiffs. Being informed by one of the plaintiffs that they had shipped the goods purchased from them by Martin only a few days previously, McKee offered his services in endeavoring to get delivery of the goods stopped, with the aid of a friend in the employ of the Philadelphia & Reading Railroad Company. He succeeded in effecting this, and the goods were recovered by the plaintiffs.

On September 14th, the defendant received from the First National Bank of New York a letter giving fuller information in regard to the forgery and returning the forged check, whereupon the defendant charged up its amount against the plaintiffs' account. The same day Jesse V. H. Rapp and Reuben B. Rapp, neither of whom had previously made any inquiry respecting the check of any of the bank officials, went to the bank and saw the cashier, Cox. Jesse V. H. Rapp testified for the plaintiffs that on that occasion he said to the cashier, "Mr. Cox, how are we to do in regard to these matters? Didn't we come to you as a child comes to a parent, asking for information? Why didn't you let my father telegraph to the maker of that check, as he wished to, instead of telling him to let you take it and you would find out for him;" to which Cox replied: "Mr. Rapp, understand we don't accuse you of doing

Charge of Court below.

anything wrong or neglecting anything, but," he says, "it is one of those peculiar cases where the law upholds us;" whereupon the witness said: "If that is the case, we will have to see further." Cox, testifying for the defendant, denied that such conversation took place, and denied that Jesse Rapp, Sr., ever asked the witness to telegraph in regard to the check.

At the close of the testimony, the court instructed the jury to find a verdict for the defendant,[1] refusing the following points presented by the plaintiffs:

1. If the jury believe that the plaintiffs, being in doubt as to the propriety of accepting the $900 check, went to the defendant for information and advice; that they communicated to the defendant the fact that the check had been presented to them by a stranger, who wished to obtain a bill of goods and cash for the same, and that they were unwilling to do this until they knew it was safe to do so; that the question of whether or not the check may not have been raised was discussed between plaintiffs and defendant's cashier; that the check, after all this, was left with the defendant on deposit, to be credited, if found to be correct and if paid; that plaintiffs declined to deliver the goods, or to pay money to the presenter of the check, until they had ascertained from the defendant that the check was all right; that, after this check was sent by the defendant to its correspondent in New York for collection, without its making any inquiry concerning the genuineness and correctness of the check, and without communicating any of the above facts, that the check was then paid by the bank upon which it was drawn to the defendant's correspondent; that the latter then credited the defendant with the amount; that this amount was then credited by the defendant to the plaintiffs, who were apprised of the fact of such credit to them; that upon the faith of, and in reliance upon, this credit, the plaintiffs thereafter paid to the presenter of the check the sum of $754; and that no notice was given to the defendant or to the plaintiffs, for a month after payment in New York of the check, of the fact that it had been raised. If all these facts are found by the jury, then the plaintiffs are entitled to recover from defendant the sum of $754, with interest from the time it refused to honor plaintiffs' check therefor.[2]

2. If the jury find that the plaintiffs, being in doubt as to the propriety of accepting the $900 check, went to the defendant for information and advice; that they communicated to the defendant the fact that the check had been presented to them by a stranger, who wished to obtain a bill of goods and cash for the same, and that they were unwilling to do this until they knew that it was safe to do so; that the question of whether or not the check may not have been raised was discussed between plaintiffs and defendant's cashier, then I instruct you that it was the duty of the defendant, in sending the check to New York for collection, to do more than merely to inclose it to its correspondent. It was its duty to make mention of the facts which had been communicated to it, and to cause some inquiry to be made as to the genuineness of the check. A neglect of its duty, if it resulted in loss to the plaintiffs by their reliance upon the fact that the check had been paid, and by their payment of $754 upon the faith thereof, subjects the defendant to the duty of paying any money credited to the plaintiffs for the check and subsequently paid out by the latter on the faith of the credit.[3]

The jury, as directed, found for the defendant, and judgment was entered on the verdict; whereupon the plaintiffs took this appeal, assigning for error:

1. The instruction to find for the defendant.[1]

2, 3. The refusal of the plaintiffs' points.[2] [3]

*Mr. John G. Johnson*, for the appellants:

In the ordinary case of the deposit, without warning, of a raised or forged check, the amount of which has already been paid out by the depositor, he, and not the bank, must bear the loss. But in the present case, the plaintiffs consulted the bank before receiving the check; apprised it of all the circumstances; deposited it with the bank, as their agent, to see that it was all right, and only paid out the money to Martin after having been credited with its amount upon their bank-book, and receiving what amounted to a practical assurance that nothing was wrong. The cashier knew that the plaintiffs were only agents of Martin for collection as to $754 of the amount of the check, and that, as soon as it should be credited as hav-

ing been collected, they would pay over that much of the collection to him.    We maintain:

1. Under the circumstances of this case, the bank was negligent, and therefore the loss must fall upon it.    With the information that the cashier had, it became his duty to notify the New York correspondent to make such inquiry of the drawer, or such statements to the bank upon which the check was drawn, as would develop the truth respecting whether the check was raised or forged.    Had this duty been performed, there would have been no loss.    It is the duty of any bank, in circumstances such as are admitted by the cashier in this case, to take ordinary precautions to guard those for whom it acts as agent in collecting a check, against loss: Clews v. Bank, 89 N. Y. 418 (42 Am. Rep. 303); s. c. 105 N. Y. 403; Espy v. Bank, 18 Wall. 619.

2. The loss to the plaintiffs occurred after they had been credited by the bank with the amount of the check, and in consequence of their paying the money to Martin in reliance upon that credit; therefore, the loss must fall on the bank. As we have said, to the extent of the cash paid to Martin, the plaintiffs acted merely as his agents in depositing the check for collection, and the bank knew this.    It is well settled that a party paying money to an agent cannot recover it back from the agent, as paid by mistake, after he has paid it over to his principal.    Again, when a mistake has occurred by which one of two innocent parties must suffer, the loss must be borne by the one who first suffered it, in this case the bank.    The principle we contend for is established by Nat. Bank of Commerce v. Bank, 55 N. Y. 215, which should be binding, as the transaction here was in New York.

3. The First National Bank of New York and the defendant bank acted as volunteers in reimbursing the Merchants' Bank, and had no right of reimbursement themselves.    The Merchants' Bank paid the money to a mere agent which charged itself with the amount in favor of the defendant bank, and the latter credited the amount to the plaintiffs.    There was, therefore, no right in the Merchants' Bank to demand payment from either of the other banks.    If it had any right of action, it was against the plaintiffs, who as principals had received the

money.   The banks, which as mere collecting agents, had received and paid over the money, could not have been compelled to refund it, and a volunteer, who pays money he is not obliged to pay, cannot recover it : National Park Bank v. Bank, 114 N. Y. 33.

· *Mr. Edward H. Weil*, for the appellee :

1. The authorities are uniform that if the suit had been against the Merchants' Bank upon the certified check, it would not have been responsible, and that, on paying the check, it had a right of action against the parties who received the money, on the ground that it was paid by mistake and without consideration.   By certifying to the check, the bank simply certified to the genuineness of the drawer's ·signature, and to the fact that he had sufficient funds on deposit to meet it, engaging that those funds should not be withdrawn by him ; but it did not warrant the genuineness of the body of the check, either as to payee or amount: Marine N. Bank v. Bank, 59 N. Y. 67 (17 Am. Rep. 305) ; Security Bank v. Bank, 67 Pa. 458; Clews v. Bank, 89 N. Y. 418 (42 Am. Rep. 303) ; s. c. 105 N. Y. 403 ; Espy v. Bank, 18 Wall. 604 ; Parke v. Roser, 67 Ind. 500 (33 Am. Rep. 102) ; Third N. Bank v. Allen, 59 Mo. 310 ; Redington v. Woods, 45 Cal. 406 (13 Am. Rep. 190) ; 2 Daniel on Neg. Inst., § 1661.

2. The rule laid down in this state, in Levy v. Bank of U. S., 1 Binn. 27, that the acceptor of a forged bill must pay it, was altered by § 10, act of April 5, 1849, P. L. 426 ; Tradesmen's Bank v. Bank, 66 Pa. 435 ; Union N. Bank v. Chambers, 9 Phila. 129 ; Corn Exchange N. Bank v. Bank, 78 Pa. 233. The point that the other banks acted as volunteers in reimbursing the Merchants' Bank, is so novel that it was not made in the court below.   The New York decision cited by the appellants as supporting it, will be found on examination to rule the question directly the other way.   Even if the facts were as assumed in the plaintiffs' points, there is not the slightest evidence of any negligence on the part of the defendant.   It is obvious that, if the plaintiffs can recover in this case, a large mass of the business of the whole commercial world must come to a standstill.

Opinion of the Court.

OPINION, MR. CHIEF JUSTICE PAXSON:

This was a suit against the defendant bank to recover an alleged balance of $900. There was no dispute that they would have been entitled to this balance but for the reason that a raised check, which they had deposited for collection, and for which they had received credit, had been charged back to them. The facts in regard to this check are substantially as follows:

The plaintiffs are dealers in furniture. On the 12th of August, 1885, a stranger, introducing himself as L. H. Martin, called at their place of business to buy furniture. He selected goods to the amount of $146, and offered in payment a check on a New York bank for $900, and requested to be paid the difference, $754, in cash. The check was marked "Good," and there was nothing upon its face to show any irregularity. Before accepting it, Jesse Rapp, Sr., a member of the firm, called at defendant bank, in which they kept an account, and submitted the check to Mr. Cox, the cashier. Mr. Cox said to him: "'Mr. Rapp, if I were you, from the experience I have had in these matters, I would not touch this check. These men who are going about with raised checks are doing this very thing,—passing altered checks on innocent people, buying a small lot of goods, and getting a large amount of money in exchange.' I said to him, 'I do not know that the check is good or not, or that it is properly certified; but if I were in your case I would not take the check or have anything to do with them, unless you know the parties with whom you are dealing.' He said to me, 'I don't know them. They are strangers. They are there to buy the goods, and I would like to sell the goods.' 'Well,' he said, 'what can you do, Mr. Cox?' I said: 'The only thing that I can do in the matter that I know of, if you just leave this check for collection, I will send it to New York to-day with the rest of the checks. If the check is kept, not forged, and not returned, then we will suppose that it is all right. That is all we can do. If you want to leave this check for collection, take it out to the discount and collection clerk, and give it to him.'"

This is the material part of Mr. Cox's testimony. I have given it somewhat at length, as it is the only evidence of what took place at this interview. Mr. Rapp was deceased at the

time of the trial, and we need not speculate as to what he would have testified to if living. In the absence of any conflict of testimony, we must assume the facts to be as detailed by Mr. Cox. His advice to Mr. Rapp was just what any prudent cashier, fit for his position, would have given.

This interview occurred on August 12, 1885. Before Mr. Rapp left the bank, he deposited the check in question for collection. He did not have his bank-book with him, and of course the check could not be entered therein. It came to the bank on the 14th, when the check was entered as cash. The bank forwarded it to the First National Bank of New York for collection, which bank received it, and credited the defendant bank with the amount. Nothing more was heard of it until September 12th, when the New York bank notified the defendant bank by wire and letter that the check in question had been altered from $7.75 to $900. The First National Bank of New York refunded the money to the Merchants' National Bank, which had paid it, and charged the same to the defendant bank. The latter, on September 14th, charged the check to Rapp & Sons, who had deposited it, and at the same time notified them thereof.

On the 14th of August, the second day after they had deposited the check, Rapp & Sons closed the transaction with Martin, and paid him the difference between the check and the bill. They did not wait to hear from the check, nor do they appear to have called at the bank at any time to inquire about it, until they received the notice of its dishonor. Reuben P. Rapp, one of the plaintiffs, testified: "I never made any inquiry at the bank until after that day they notified us that the check was bad, and then brother and I went down."

The plaintiffs claim to recover against the bank for three reasons, viz.:

1. The bank was negligent.

2. The loss to plaintiffs occurred after they had been credited with the amount of the check.

3. The defendant bank was a volunteer in reimbursing the New York bank.

These propositions can be readily disposed of. The defendant bank assumed no duty, and was chargeable with no duty, except that of forwarding the check for collection in the usual

manner.   There was nothing upon the face of the check to indicate that it had been forged or raised.   The mere possibility of such a thing was suggested by the cashier, not from any indications upon its face, but from the proposed transaction between Martin and Rapp & Sons.   The latter were warned that it was the practice of those who altered checks to buy a small bill, and get a large amount of money in return.   The signature to the check being admittedly genuine, and the raising of it so skilfully done as to avoid detection, it was promptly paid when presented to the Merchants' National Bank, upon which it was drawn.   In such case the fraud would only be detected when the bank came to settle the account of the depositor who drew the check.   This might involve a delay of weeks.   When the check was called to the attention of Edward L. Lewis, who drew it, the forgery was at once detected, and the check was promptly started on its way back to Rapp & Sons, by the same channel it had been forwarded.   We see no evidence of delay or negligence in this branch of the case, and it needs no argument to show that each bank or person who received the money or a credit for this check was bound to restore it when the fraud was discovered.   This is the general rule, and we need not discuss it at length, as the court below was not asked for instructions as to the effect of the payment of the check by the Merchants' National Bank, and its right to reimbursement therefor.

The proposition that the loss to the plaintiffs occurred after they had been credited with the check, and by reason thereof, cannot be sustained.   Checks deposited for collection in city banks are entered as cash unless there is some reason to distrust the depositor.   There was no such reason in this case, and the evidence shows that the check would have been entered as cash on August 12th, when it was deposited, but for the reason that Mr. Rapp had not his bank-book with him.   It was so entered on the 14th of August, when the book came to the bank.   It has never been supposed that, when a bank credits a depositor with the amount of a check left for collection, it may not be charged back to him in case it turn out to be worthless.   Such a rule would occasion much inconvenience to banks, and much more to their customers.   Upon a careful review of the case, we fail to find any evidence of negligence on the part of the

defendant bank. If there was negligence on the part of any one, it was that of the plaintiffs themselves in dealing in the manner they did with an entire stranger, after warning to have nothing to do with him. In their eagerness to make a sale, they overlooked the risk; and, without waiting until assured of the genuineness of the check, they sold the goods, and advanced a large amount of money besides. Fortunately, the goods were recovered, but the money is gone unless they can make innocent parties pay it.

I have not referred to the conversation between Jesse V. H. Rapp and Mr. Cox as testified to by the former, for the reason that I do not regard it as bearing upon the case. Mr. Rapp was not present at the conversation between his father and Mr. Cox at the time the check was deposited, and had no knowledge of what occurred at that time except from hearsay. His version of the transaction, so derived, was flatly denied by Mr. Cox.

I have not discussed Clews v. Bank, 89 N. Y. 418; Espy v. Bank, 18 Wall. 619; National Bank v. Banking Ass'n, 55 N. Y. 215; and National Park Bank v. Seaboard Bank, 114 N. Y. 33, for the reason that I do not think they apply to the facts of this case as developed by the testimony. If it had been shown that the defendant bank had misled the plaintiffs, and that the latter had acted upon the faith of it, to their injury, we would have had a different case before us. It is true, the cause was argued upon that theory, but the facts are not so. The plaintiffs had no right to be misled by the mere credit of the check as cash; they made no inquiry at the bank after depositing the check until it was dishonored, but sold the goods and cashed the balance of the check, not only without due caution, but in the face of warning not to do so. Under such circumstances, they cannot throw their loss upon the bank.

We are of opinion that the court below committed no error in refusing to charge as requested by the plaintiffs' first and second points.

Judgment affirmed.