## BANK OF BIG CABIN v. ENGLISH.

### No. 477.    Opinion Filed May 10, 1910.

### Rehearing Denied November 1, 1910.

#### (111 Pac. 386.)

**BANKS AND BANKING—Collections—Rights of Depositor.** The credit given the plaintiff by the bank under the circumstances of this case may be charged back to him in case of the inability of the bank to collect the money necessary to make the deposit good, unless the bank has been negligent in its duty to exercise ordinary care and diligence to make the collection.

(Syllabus by the Court.)

*Error from District Court, Craig County; T. L. Brown, Judge.*

Action by J. G. English against the Bank of Big Cabin. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*Seymour Riddle,* for plaintiff in error.
*W. H. Kornegay,* for defendant in error.

KANE, J. This was an action commenced by the defendant in error, plaintiff below, against the plaintiff in error, defendant below, to recover a deposit alleged to have been made by the plaintiff in the defendant bank. There was judgment for the plaintiff below, to reverse which this proceeding in error was commenced.

It seems that, on or about the 22d day of October, 1907, the plaintiff shipped from the station of Big Cabin, Okla., to Kansas City, Mo., a car load of hogs, consigning the same to the commission firm of Byers & Co., of Kansas City, with instructions to sell said hogs and forward the proceeds derived from said sale to the Bank of Big Cabin, Craig county, Okla., to be credited to the shipper. The commission firm sold the hogs, and on the 24th day of October, 1907, deposited with the Interstate National Bank its check to be placed to the credit of the Bank of Big Cabin for J. G. English, said check being accompanied by written

duplicate advice to this effect, one of which was kept by the bank and the other receipted and returned to the commission firm. In the course of the same afternoon, the deposit slip and advice reached the bookkeeper of the Interstate National Bank, and he asked the cashier if the credit should not go through the Bankers' Trust Company of Kansas City, Mo. The cashier looked in the Bankers' directory, and found the Bankers' Trust Company was designated as the correspondent of the Bank of Big Cabin, and told the bookkeeper to change the credit and place it in the books of the Interstate Bank for the Bankers' Trust Company, Kansas City, to be credited to the account of the Bank of Big Cabin, Okla., for J. G. English, which was done. On the same day the Bank of Big Cabin was advised of this transaction by postal card by the Interstate Bank, as follows: "We credit your account by direction of J. G. English, $909.99, Bankers' Trust Company, Kansas City, Mo." The Bankers' Trust Company was also notified of the transaction by post card as follows: "We credit your account by direction of J. G. English, $909.99, account of Bank of Big Cabin, Oklahoma." On the 26th day of October, 1907, the Bankers' Trust Company drew on the Interstate Bank for the amount of this credit, and the draft was paid through the clearing house. The Bank of Big Cabin received the card of advice from the Interstate Bank on the 25th day of October, 1907, and immediately gave the plaintiff credit for the amount stated therein upon the books of the bank. Two or three days after this the plaintiff dropped into the bank, and the credit was entered on his passbook. At this time the cashier of the bank told the plaintiff that the bank had received the advice, showed him the credit card, and told him that he had credited his account on the strength thereof. On the 28th day of October, 1907, the Bankers' Trust Company closed its doors, and the Bank of Big Cabin, not having secured the money to make good the credit to the plaintiff, charged the same back against him upon its books, whereupon, after demand and refusal of payment, this suit was commenced. It further appears that the Bankers' Trust

Company was not the correspondent of the Bank of Big Cabin, and that, on the 29th day of October, 1907, the Bank of Big Cabin advised the Interstate National Bank by letter as follows:

"Big Cabin, Ind. Ter., Oct. 29, 1907.
"Interstate Nat'l. Bank, Kansas City, Kans.

"Gentlemen: Your advice of the 24th states that you have placed $909.99 to our credit at Bankers' T. Co., K. C., Mo., for use of J. G. English. We desire that you get this money where we can get it, as have never given you any instructions to put anything in this bank for us and we will look to you to protect us. Trusting that you will take this matter up at once and arrange it satisfactorily, we are

"Yours truly,
(Signed) "ROBERT E. LEE, Cashier."

And on the same day said Bank of Big Cabin advised the plaintiff by letter, as follows:

"Big Cabin, Ind. Ter., Oct. 29, 1907.
"J. G. English, City.

"Dear Sir: The bank of Kansas City in which you had the proceeds of your last shipment of hogs ($909.99) has quit business owing to the stringency in the money centers, and we are unable to get this money, and have charged your account this amount. As soon as you get this letter come up to the bank.

"Yours truly,
(Signed) "ROBERT E. LEE, Cashier."

Counsel for defendant in error, in his brief, states his position as follows: "In our case at bar, the Bank of Big Cabin recognized while the matter was in progress that it had gotten the money and acted upon that theory at all times. In contemplation of the law, the moment the money was deposited in the Interstate National Bank at Kansas City to the credit of the Bank of Big Cabin, and it received information thereof, it received the money;" and, further: "In the present case, upon all theories, when the deposit was made, it ended the transaction. The Bank of Big Cabin became debtor to English, and is liable to him." From the form of the action and the argument of the cause in this court, it is obvious that the court below adopted the theory of counsel in rendering its judgment. With this view of the law we cannot agree.

To our mind the liability of the Bank of Big Cabin, if liable at all, must be predicated upon the theory that it undertook to collect the money deposited in the Bankers' Trust Company for the plaintiff. If this view is correct, the relation of debtor and creditor would not arise between the Bank of Big Cabin and the plaintiff, until after it collected and secured possession of the money, either actually or by settlement of accounts with the trust company. *Evansville Bank v. German-American Bank,* 155 U. S. 556, 15 Sup. Ct. 221, 39 L. Ed. 259; *Beal v. Somerville,* 50 Fed. 647, 1 C. C. A. 598, 17 L. R. A. 291; *Beal v. National Exchange Bank,* 55 Fed. 894, 55 C. C. A. 304. It is true the facts in the case at bar do not make it in all respects analogous to a case involving an ordinary commercial collection where banks are used as an intermediary, but, for the purpose of establishing the legal relationship existing between the parties, we think the analogy sufficient. The Bank of Big Cabin, upon being informed that certain moneys were deposited to its credit with the Bankers' Trust Company for the benefit of Mr. English, undertook to carry out the arrangement between the parties by giving Mr. English credit for the sum upon its books, and, before it drew the money from the Bankers' Trust Company to make the deposit good, it became insolvent. Whilst the bank entered this deposit without specific instruction from Mr. English, he affirmed what had been done upon being informed thereof by the bank two or three days after credit had been given him and at that time an entry of the credit was made upon his passbook. The money deposited with the Bankers' Trust Company, whilst it was deposited to the credit of the Bank of Big Cabin and was payable upon its draft or check, yet belonged to Mr. English, and the mere fact that the deposit was payable to the order of the bank, instead of to Mr. English or his order, would not, to our mind, change their legal status, or make the Bank of Big Cabin anything but the agency through which the money was to be collected. Under such circumstances, it was the duty of the Bank of Big Cabin to use ordinary care

and diligence to make the collection, and any failure to do so is a breach of duty, and is negligence for which it may be held liable in a proper action. *Bank of Washington v. Triplett and Neale,* 1 Pet. 25, 7 L. Ed. 37; *Evansville Bank v. German-American Bank, supra.* There is nothing in the case of *Commercial Bank of Penn. v. Armstrong,* 148 U. S. 50, 13 Sup. Ct. 533, 37 L. Ed. 363, cited by counsel for defendant in error, which conflicts with this. In *National Gold Bank & Trust Company v. McDonald,* 51 Cal. 64, 21 Am. Rep. 697, it was held that:

"Checks deposited with a bank and credited in the depositor's passbook are taken, in the absence of special agreement, for collection and not as cash; and may be afterward returned and the credit annulled if there are no funds to meet them; and this is so whether the check is drawn on the same bank or another."

To the same effect are *Hazlett v. Commercial National Bank,* 132 Pa. 118, 19 Atl. 55; *Board of Chosen Freeholders of the County of Middlesex v. State Bank,* 32 N. J. Eq. 467. The rule we think applicable to the case at bar is stated in *Rapp et al. v. National Security Bank,* 136 Pa. 426, 20 Atl. 508, as follows:

"When the amount of a check, left with a bank for collection, is credited to a depositer as cash, it may be charged back to him in case it turns out to be worthless, unless the bank has been negligent or has done something to mislead the depositor into acting, to his injury, on the faith of its goodness. The depositor has no right to be misled by the mere credit of the check as cash."

As this theory of the case seems not to have received the consideration of the court below, we think its judgment should be reversed and the cause remanded, with directions to grant a new trial. It is so ordered.

All the Justices concur.