## BANK OF COMMERCE v. INGRAM.

No. 1627. Opinion Filed May 14, 1912.

(124 Pac. 64.)

**BANKS AND BANKING**—Collections—Negligence—Liability. Where the payee of a check drawn on a bank presents the same to another bank for collection, which bank gives him credit therefor on his passbook, the relation of principal and agent arises, and it is the duty of the agent to exercise reasonable care and diligence to make the collection; and its failure to do so renders it liable for any loss its principal may suffer thereby.

(Syllabus by the Court.)

*Error from Muskogee County Court;*
*W. C. Jackson, Judge.*

Action by A. T. Ingram against the Bank of Commerce. Judgment for plaintiff, and defendant brings error. Affirmed.

*George S. Ramsey* and *C. L. Thomas,* for plaintiff in error.

*S. M. Rutherford* and *James W. Cosgrove,* for defendant in error.

KANE, J. This was an action, commenced by the defendant in error, plaintiff below, against the plaintiff in error, defendant below, to recover damages for alleged negligence in connection with two certain checks which were deposited by the plaintiff with the defendant for collection. On trial to the court, there was judgment for the plaintiff, to reverse which this proceeding in error was commenced.

The contention of the plaintiff in error is that there was not sufficient evidence adduced at the trial to support the judgment rendered, or to establish any liability whatever on the part of the plaintiff in error, for the reasons, first, that, under the evidence, the defendant in error was guarantor of the payment of the two checks drawn payable to his order by the Muskogee Gin Company on the Bank of Porum, and therefore no notice of non-

payment was necessary; and, second, that even if it be held that notice of nonpayment of the checks was necessary, the burden of proving negligence on the part of the plaintiff in error, the Bank of Commerce, was upon the defendant in error, and this burden has not been sustained.

Neither of these contentions are well taken. There is very little dispute as to the facts. It seems that in the fall of 1905, the defendant in error, Ingram, was buying cotton for a concern known as the Muskogee Gin Company, whose general agent was one Sheppard; that along about November 1, 1905, Ingram received the two checks in controversy, presented them to the Bank of Porum for payment, and payment was refused, for the reason that the gin company had no funds in the Bank of Porum, having transferred its account at that bank to the defendant bank. The cashier of the Bank of Porum told the plaintiff of the transfer of the account of the Muskogee Gin Company, and that he would have to take the checks to the Bank of Commerce for payment. As to what happened in regard to this, plaintiff testified as follows:

"Well, I went to the other bank and asked Mr. Roach if that was a fact, and he said, 'Yes'; and I said that I have got these two checks here, and he says, 'Well you indorse them, and I will just put them on your passbook.' That was just as I would do any other check. Well, I got credit for them along about the 1st of November, 1905; and I kept on and continued to buy cotton for Mr. Sheppard, and kept on getting checks just like those; but they were written on the Bank of Commerce. And I guess I used, anyhow, seven or eight thousand dollars worth of Mr. Sheppard's checks later than that date, and never had a question raised about his ability for paying them. Well, the season went along, and in March Mr. Sheppard closed his gin and left. Q. When was it you put these checks in? A. It was November, 1905. Q. And when was it the gin company failed? A. It was along in June or July, 1906. They closed the gin down in March and left town. Then I never thought about Mr. Sheppard until along in the summer. One day Mr. Roach called me in and asked me if I had heard that Mr. Sheppard's gin company had failed, I told him 'No,' and he said he was afraid I was going to lose some money; and he said it was these two checks that I had deposited about the 1st of November, and that he had been

carrying them as cash items, and had never collected them. Mr. Sheppard was gone at this time, and I had no way of getting this money; but at the same time, if I had known this sooner, at any time during the month of January or February, that the checks were not all right, I could have gone to Mr. Sheppard at any time, and he would have given me a check on the Bank of Commerce, and it would have been all right. However, after Mr. Sheppard had left town, then these checks were turned back to me, and I had no way to recover for them; but he would have paid me any day during the time he was there. Q. How long was it after the gin company had failed that he notified you there was any question about the checks? A. I think it was about the month following that I was notified that they had failed. Q. Were those checks charged back against your account at that time? A. No, sir; it was something like the last days of October, or the first days of November, 1906, before that."

The cashier of the Bank of Commerce testified that Ingram deposited the checks with him, and he gave him credit for same; that the checks were turned down; and that he notified Mr. Ingram of nonpayment within a reasonable time, but Ingram asked him not to charge the checks back on him, but to collect them.

Under the rule laid down by this court that it will not weigh the evidence or disturb the findings of the trial court, where there is evidence reasonably supporting the judgment, we must take the plaintiff's theory of the case as established. He testified that he deposited these checks for collection as he would any other checks; that the cashier gave him credit therefor on his pass-book, pending collection; that no notice of nonpayment was given him until about a month after the gin company failed, and many months after the checks were deposited for collection. The general rule is that when the amount of a check, left with a bank for collection, is credited to a depositor as cash, it may be charged back to him, in case it turns out to be worthless, unless the bank has been negligent, or has done something to mislead the depositor into acting, to his injury, on the faith of its goodness. *Bank of Big Cabin v. English,* 27 Okla. 334, 111 Pac. 386. The evidence shows that the Muskogee Gin Company was solvent and paying its obligations for several months after the plaintiff's checks were deposited for collection; and there is very little doubt

that if the plaintiff had known the checks on the Bank of Porum were not collected he could have secured checks, in lieu thereof, drawn on the Bank of Commerce, which would have been paid on presentation. The bank's failure to collect the checks was not known to Ingram until eight or nine months after he deposited them for collection, and his account was not charged back with the amount thereof until twelve or thirteen months thereafter. The relation of principal and agent existed between plaintiff and defendant, and it was the duty of the agent to exercise reasonable care, skill, and diligence to make the collection; and its failure and neglect to do so render it liable to Ingram for any loss he may have sustained thereby. *Hobart Nat. Bank v. McMurrough,* 24 Okla. 210, 103 Pac. 601; *Bank of Big Cabin v. English,* 27 Okla. 334, 111 Pac. 386, *supra;* Mechem on Agency, secs. 511-518; Daniel on Negotiable Instruments (5th Ed.) sec. 327, p. 334. As we view it, there is but one question for determination, and that is whether the bank was negligent in the duty owed the plaintiff. We think there was sufficient evidence to sustain the finding of the court below on that question. The judgment of the court below is affirmed.

TURNER, C. J., and HAYES and WILLIAMS, JJ., concur; DUNN, J., absent, and not participating.