## TURNER v. AMERICAN NATIONAL BANK et al.

No. 10251—Opinion Filed Oct. 11, 1921.

Rehearing Denied Nov. 1, 1921.

(Syllabus.)

1. **Evidence — Parol Evidence to Explain Writing—Bank Deposit Slip.**

A deposit slip, executed by a bank and delivered to a depositor, is not a written contract in which all oral negotiations and stipulations are merged, but it is merely a receipt constituting prima facie evidence that

the bank received the sum stated at that time, which may be explained or contradicted by parol evidence.

### 2. Corporations — Diversion of Proceeds of Checks to Payment of Officer's Individual Debt.

S., being personally indebted to T., deposited in a bank certain checks payable to a loan company, of which S. was president, and secured from the bank a deposit slip showing that S.'s indebtedness to T. had been credited to the account of the latter. Held, that, upon proper proceedings, S., the bank and T. could be restrained from diverting the proceeds of the checks so deposited to the payment of the personal debt of S., and directed to apply the same to the use and benefit of the loan company.

Error from District Court, Oklahoma County; Edward D. Oldfield, Judge.

Action by Guy J. Turner against American National Bank to recover an deposit slip; consolidated with action by C. M. Keys Commission Company against American National Bank, Guy J. Turner, et al. From adverse judgment, Turner brings error. Affirmed.

Wilson, Tomerlin & Threlkeld, for plaintiff in error.

Ames, Chambers, Lowe & Richardson, for defendants in error.

PITCHFORD, J. The plaintiff in error commenced this action against the American National Bank, in the district court of Oklahoma county, Oklahoma, to recover judgment for the sum of $15,250:

It appears that Alva Smith was indebted to the plaintiff in the sum of $15,250, which amount was secured by a pledge of 100 shares of the capital stock of the Western National Bank. The capital stock of the last-named bank had been purchased by Smith in July, 1917. At the time of the purchase, Turner furnished Smith with $15,250, in order to complete the payments. After the sale of the stock had been consummated, Smith became its president. In November following, the Western National Bank found itself in an insolvent condition, and was taken over and merged into the American National Bank. About this time, Turner importuned Smith for the payment of $15,250, whereupon Smith and Turner called upon Mr. Johnson, president of the American National Bank, Smith wanted Johnson to pay Turner the $15,250 and charge the amount to the stockholders' account of the Western National Bank. This, Mr. Johnson refused to do.

After the interview with Mr. Johnson, Smith and Turner then had a talk with Mr. Carson, vice president of the American National Bank. At that time, Mr. Smith informed Mr. Carson that he had a number of checks, amounting to something over $17,000, payable to the First Mortgage Cattle Loan Company, and wanted the defendant bank to receive the checks as a deposit and to credit Turner's account with $15,250, and place the balance to the credit of the First Mortgage Cattle Loan Company. This arrangement was refused by Mr. Carson, who stated at the time that the bank would take the checks, and, if they were paid, that the account of the First Mortgage Cattle Loan Company would be credited with the amount and the loan company could issue its checks to Mr. Turner. Mr. Smith replied that this plan did not suit him, and then turned to Mr. Turner and informed him they would arrange the matter some other way.

After this conversation with Mr. Carson, Smith and Turner then went to Dunlop, a teller of the defendant bank, and Smith arranged with Dunlop to do practically the very thing refused by Mr. Carson; that is, Turner's account was credited with $15,250, and a deposit slip was given to Smith for the amount. The balance of the checks, amounting to something over $2,000, was deposited to the credit of the First Mortgage Cattle Loan Company. Smith thereupon delivered to Turner the deposit slip showing the credit to his account, whereupon Turner surrendered to Smith the 100 shares of stock of the Western National Bank, and Smith in turn delivered the same to the bank. The transaction with Dunlop was made after banking hours on Friday afternoon. On the following Monday Mr. Johnson was informed of the arrangements made with Dunlop, and thereupon, by telephonic and other inquiries, ascertained that payment of the checks so deposited had been refused, except two, one for $7,949.69 and one for $300. He thereupon telephoned Mr. Turner to come to the bank and informed him of the condition of the checks and stated that the bank would charge back, to the account of Turner, and the account of the First Mortgage Cattle Loan Company, the respective amounts for which they had received credit, and tendered the shares of stock back to Turner, which were refused, and Turner immediately filed suit against the defendant bank to recover the deposit.

Smith seems to have been a man of diversified talents and various pursuits; he was not only president of the Western National Bank, but was also president of the First Mortgage Cattle Loan Company, as well as president of the C. M. Keys Commission Company.

The Keys Commission Company had received from one H. A. Smith 120 head of cattle for sale on commission. These cattle were covered by a mortgage to the First Mortgage Cattle Loan Company; the cattle were sold by the commission company, and, knowing that the cattle were mortgaged, it issued the check, amounting to $7,949.69, payable to the mortgagee. This mortgage, however, had been assigned to the American National Bank, and the check for $7,949.69 was included among the checks deposited by Smith at the time the deposit slip was issued to Turner. The Keys Commission Company. learning that Smith was attempting to use this check in payment of his private indebtedness, and that the mortgage to the Mortgage Cattle Loan Cmpany had been assigned. filed suit against the American National Bank, Smith et al., to which Turner was made a party, seeking to restrain Smith from using the check as he was attempting, and have the proceeds of the check paid to the assignee of the mortgage. The two cases were consolidated and tried together. The trial court rendered judgment denying Turner any relief against the American National Bank, and also rendered judgment requiring the defendant bank to apply the proceeds of the check issued by the Keys Commission Company upon the indebtedness of the First Mortgage Cattle Loan Company.

The plaintiff in error contends that the act of the defendant bank. in crediting the account of Turner with the sum of $15,250, at the request of Smith, was equivalent to the deposit by Turner of a check drawn by a depositor of the bank, and that when said credit was made, this was equivalent to an actual payment, and the bank's indebtedness to Turner for the amount became fixed and irrevocable; that there is no distinction between an oral request to the bank to charge one account and credit another and a request in writing, so to do when the bank has acted on such oral request. In order to sustain this contention, plaintiff has cited numerous authorities. which we have carefully examined. The authorities cited t' plaintiff establish the following rule: That where a check is issued by a customer of a bank, and the holder of the check presents the same for payment and has the amount represented by the check placed to his credit, the bank becomes at once the debtor of the party presenting the check and cannot, on failure of the drawer of the check to pay the same. charge off the credit to the holder of the check. The authorities cited by the plaintiff are numerous and all go to this extent; the rule being well stated in the case of First National Bank

of Cincinnati v. Burkhardt, 100 U. S. 689, 25 L. Ed. 766, wherein it is said:

"When a check on itself is offered to a bank as a deposit, the bank has the option to accept or reject it, or to receive it upon such conditions as may be agreed upon. If it be rejected, there is no room for any doubt or question between the parties. If on the other hand, the check is offered as a deposit and received as a deposit, there being no fraud and the check genuine, the parties are no less bound and concluded than in the former case. Neither can disavow or repudiate what has been done. The case is simply one of an executed contract. There are the requisite parties, the requisite consideration, and the requisite concurrence and assent of the minds of those concerned."

In the instant case, however, no check was issued by Smith to Turner. Smith simply deposited the checks and had Turner's account credited with the amount Smith owed him. The authorities are practically uniform in holding that a deposit slip by a bank is nothing more than a receipt and is open to explanation as to the conditions and circumstances surrounding the issuance thereof.

In American Life Ins. Co. v. Citizens' State Bank of Headrick. 66 Okla. 198. 168 Pac. 437, L. R. A. 1918B, 296, the syllabus reads as follows:

"A deposit slip, executed by a bank and delivered to a depositor, is not a written contract in which all oral negotiations and stipulations are merged. but it is merely a receipt constituting prima facie evidence that the bank received the sum stated at that time. which may be explained or contradicted by parol evidence.'

To the same effect, see American National Bank of Stigler v. Funk, 68 Oklahoma. 172 Pac. 1078. L. R. A. 1918F, 1137.

A bank accepting checks and crediting them to a depositor's account. in the absence of special agreement. takes them as a collecting agent and may charge them back to the account in the event they prove worthless or belong to another.

In Bank of Big Cabin v. English. 27 Okla. 334. 111 Pac. 386, the court says at page 338:

"In National Gold Bank & Trust Company v. McDonald, 51 Cal. 64. 21 Am. Rep. 697. it was held that: 'Checks deposited with a bank and credited in the depositor's passbook are taken, in the absence of special agreement. for collection and not as cash; and may be afterward returned and the credit annulled if there are no funds to meet them; and this is so whether the check is drawn on the same bank or another.' To the same effect, are Hazlett v. Commercial National Bank. 132 Pa. 118. 19 Atl. 55; Board of Chosen Free-

holders of the County of Middlesex v. State Bank, 32 N. J. Eq. 467, The rule we think applicable to the case at bar is stated in Rapp et al. v. National Security Bank, 136 Pa. 426, 20 Atl. 508, as follows: 'When the amount of a check, left with a bank for collection, is credited to a depositor as cash, it may be charged back to him in case it turns out to be worthless, unless the bank has been negligent or has done something to mislead the depositor into acting, to his injury, on the faith of its goodness. The depositor has no right to be misled by the mere credit of the check as cash.' "

In Hastings v. Hugo National Bank, 81 Okla. 189, 197 Pac. 457, the third paragraph of the syllabus reads as follows:

"A deposit slip issued by a bank is but prima facie evidence that the bank received the amount of the deposit on the date shown by the slip. It has no more force and effect than any other form of receipt, and is open to explanation as to the conditions surrounding the deposit, and the circumstances under which it was given may be inquired into."

Mr. Turner knew, at the time the deposit slip was given to him, that Smith did not have the money in the bank; he knew that Smith had secured the deposit slip by reason of the checks delivered at the time to Dunlop. Mr. Turner was evidently familiar with the banking rules, as he had been vice president of the Western National Bank, and he knew that these checks would not be placed to the credit of Smith or the First Mortgage Cattle Loan Company in such a way as to bind the defendant bank until the amounts represented by the checks were collected; he knew that the bank reserved the right to charge the amounts represented by the checks back to the account of Smith or the mortgage company in the event they were not paid.

There is additional evidence showing that Turner knew how Smith was securing the deposit slip representing the credit of $15,250. When Smith and Turner had the conversation with Mr. Johnson, it was sought to have the bank pay Turner and have the amount charged to the stockholders' account of the Western National Bank. Mr. Turner has not been, in any way, injured by the action of the bank, he still has his claim against Smith. While it is alleged that he canceled his obligation against Smith, this was done upon the theory that the checks would be paid; and further, the certificates of stock of the Western National Bank, which he was holding as collateral, and which he returned to Smith, were worthless, and were tendered back to him by the defendant bank. We conclude there was no error in the judgment of the trial court in holding that the bank was not liable to Turner for the deposit attempted to be made to the credit of Turner, as evidenced by deposit slip issued by Dunlop.

The plaintiff in error next contends that the trial court erred in decreeing that the temporary injunction be made perpetual, and ordering the defendant bank to pay upon the mortgage indebtedness of H. A. Smith the amount realized upon the check of C. M. Keys Commission Company, amounting to the sum of $7,949.69. We fail to see where there is any merit in this contention. H. A. Smith mortgaged to the First Mortgage Cattle Loan Company the cattle sold by the Keys Commission Company. This mortgage having been assigned to the defendant bank, it follows that the First Mortgage Cattle Loan Company was holding the check in trust for the assignee; however, if the mortgage had never been assigned by the mortgagee, Smith, as an officer of the company, would not be allowed to divert the effects of the company to the payment of his individual indebtedness. The rule is well settled that one who receives from an officer of a corporation the securities of that corporation in payment of a personal debt of the officer does so at his peril, and cannot hold these securities as against their real owner. The check for $300 which was collected was credited to the account of the First Mortgage Cattle Loan Company, the same being payable to that company, and was the property of the loan company; and under the facts as developed, it was the duty of the bank to credit this amount to the loan company, and then it would be left for the loan company to disburse this amount, and Smith, as its president, would not be permitted to use said sum in the payment of his individual indebtedness.

In Jenkins v. Planters' & Merchants' Bank, 34 Okla. 607, 126 Pac. 757, the last part of the first paragraph of the syllabus is as follows:

"The agent of a principal, the trustee of a cestui que trust, or the officer of a corporation, is not permitted to divert to his own use the funds of his principal without authority to do so; and one who receives from an officer of a corporation the notes or securities of such corporation, in payment of, or as security for, a personal debt of such officer, does so at his peril, and in such case the rule is not relaxed by reason of the degree of confidence reposed in the officer by the purchaser."

In First National Bank of El Reno v. Gillette, 52 Okla. 341, 152 Pac. 1084, the syllabus is as follows:

"Where a bank in which the funds of a corporation are deposited, and to which bank an officer of the corporation intrusted

with the management of its affairs is personally indebted, knowingly accepts and pays a check drawn by such officer against the funds of the corporation in payment and satisfaction of his individual obligation, such bank is liable to the corporation for the amount of its funds so misappropriated in payment of the individual debt of such officer."

Under this rule, the American National Bank and Turner would have been liable to the First Mortgage Cattle Loan Company in knowingly diverting its funds to the payment of the individual indebtedness of Smith to Turner.

We conclude that the judgment of the trial court should be affirmed, and it is so ordered.

HARRISON, C. J., and McNEILL, ELTING, and NICHOLSON, JJ., concur.