## TILLEY et al. v. SECURITY STATE BANK.

No. 28060. Sept. 13, 1938.

Pryor & Wallace, for plaintiffs in error.

Thos J. Horsley and Hicks Epton, for defendant in error.

PHELPS, J. This was an action by the Security State Bank, located at Wewoka, Okla., against J. O. Tilley and Orville Tilley to recover $800 which the defendants had checked out of their account in the bank. The trial judge directed a verdict for the plaintiff, and the defendants appeal.

J. O. Tilley is the father of Orville Tilley. For a considerable while prior to January 27, 1933, they had carried a joint account

in the plaintiff bank. Each made deposits in and drew checks on the account. On the above date they had made negotiations to purchase an oil lease, and needed $1,000 for that purpose, but had only $200 in their account. Orville Tilley sent his father, J. O. Tilley, to Conway, Ark., to borrow $800, and to have it wired to him through the plaintiff bank at Wewoka. The father arrived in Conway, Ark., on the night of January 26, 1933, and on the next day succeeded in borrowing the $800 from his mother, who resided there. She had $500 on deposit in the Bank of Conway, in that city. She withdrew $300 from her postal account and went to the bank, with Mr. Tilley, for the purpose of forwarding the money to the other defendant in Wewoka. The bank's representative told her that the bank could telegraph the money to Wewoka at less expense to her than if she should send it by Western Union. She instructed the Bank of Conway, in the presence of J. O. Tilley, to telegraph $800 to Orville Tilley in Wewoka.

In accordance with this arrangement the Bank of Conway on January 27, 1933, telegraphed the Security State Bank, at Wewoka, as follows:

"Security State Bank
    "Wewoka, Okla.

    "Notify and pay Orville Tilley eight hundred Dollars we remit—
        "(Signed)    Bank of Conway."

The above telegram was received by the plaintiff bank, at Wewoka, Okla., within less than half an hour after it was sent. Orville Tilley appeared at the bank, asked if the telegram had been received, and was told that it had been. The bank cashier gave Orville Tilley a duplicate deposit slip for $800, credited the item to the aforesaid account, and on the following day the bank paid out the amount, on a check written by Orville Tilley to a third person in purchase of the oil and gas lease.

However, on that same day and without the knowledge of the plaintiff bank, the Bank of Conway, in Arkansas, had been closed by order of the State Bank Examiner of that state. It was wholly insolvent. The plaintiff bank never received the remittance from the Arkansas bank. Neither bank had an account in nor was a correspondent bank with the other bank. Plaintiff bank made demand on the defendants to repay it the amount of $800, which it had deposited to the credit of their joint account, and which they had checked out, and they refused. Hence this action.

In appealing, the defendants assume that the bank's recovery was based on the theory of agency, in that the Arkansas bank acted as the agent of the defendants in causing the loss to the plaintiff bank. They therefore say that it was error for the trial judge to take the issue of agency away from the jury's consideration. But we are of the opinion that it is immaterial whether the Bank of Conway was the agent of defendants in sending the telegram and in failing to remit, thus causing the loss. Regardless of whether the Bank of Conway was or was not the agent of the defendants, the undisputed evidence reveals two pertinent facts: (1) The existence of a long-established custom, of which defendants had knowledge, that items credited to the accounts of depositors, when such items were checks or bills of exchange, were credited conditionally, subject to final payment; that if such a check or other item proved uncollectible, the amount of the deposit was always charged back against the depositor's account; (2) the duplicate deposit slip issued the defendants in the instant case, covering the $800, specifically provided that:

"All items are credited subject to payment under conditions stated on back of duplicate ticket hereof.

(Indorsed on Back)

"Notice

"In receiving items for collection, this Bank acts only as the depositor's collecting agent and assumes no responsibility beyond the exercise of due care. **All items are credited subject to final payment in cash or solvent credits.** * * *

"This Bank or its correspondents may send items, directly or indirectly, to any bank including the payor, and accept its draft or credit as conditional payment in lieu of cash; it may charge back any item at any time before final payment, whether returned or not, also any item drawn on this Bank not good at close of business on day deposited."

The evidence as to the aforesaid custom, and as to the specific provision in the duplicate deposit slip, was undisputed. For all practical purposes the telegram had the effect of, or was analogous to, a check or bill of exchange. The plaintiff argues that it was a bill of exchange, citing section 11425, O. S. 1931, 48 Okla. St. Ann. sec. 281, setting forth the uniform definition of bill of exchange under the Negotiable Instruments Law. Whether we call it that, or call it by some other name, it represented an item credited subject to payment under the conditions stated on the duplicate deposit slip. It is the universal custom of

banks, in the absence of an agreement to the contrary, to credit such items conditionally and to charge them back against the customer's account if they prove worthless. Otherwise, commercial affairs would seriously be impeded, and the transactions of individuals could not go forward with the dispatch required by present day conditions. This court has passed on the question several times. Bank of Big Cabin v. English, 27 Okla. 334, 111 P. 386; Turner v. Amer. Nat. Bank, 83 Okla. 259, 201 P. 514; Townley v. Exchange Nat. Bank of Tulsa, 108 Okla. 144, 234 P. 574. In the latter decision we said in the syllabus:

"Where the payee of a check deposits same and receives credit on his account in the bank on which it is drawn, and at the time of receiving such credit knew the custom to be that such credit was given on condition the drawer had to his account sufficient funds to meet the check, or should have known thereof, the credit is conditioned by the custom, and same may be charged back against the account of the depositor thereunder."

In the Turner Case, supra, we said:

"A bank, accepting checks and crediting them to a depositor's account in the absence of special agreement, takes them as a collecting agent and may charge them back to the account in the event they prove worthless or belong to another."

Many authorities are reviewed in the decisions cited above, and it is therefore unnecessary to repeat discussion of the question.

A subproposition to the above is also advanced by the defendants, but because the principles of law herein announced required the judgment as rendered, further discussion is unnecessary. The trial judge correctly applied the law to the undisputed facts of the case, and the judgment should be affirmed. It is so ordered.

OSBORN, C. J., BAYLESS, V. C. J., and WELCH, CORN, GIBSON, HURST, and DAVISON, JJ., concur.