MERCHANTS' NAT. BANK OF HOUSTON
v. TOWNSEND.

(Court of Civil Appeals of Texas. Galveston.
May 2, 1912. Rehearing Denied
May 23, 1912.)

1. BILLS AND NOTES (§ 408*)—PURCHASE OF DRAFT—PROTEST FOR NONPAYMENT.

A bank buying a draft, drawn by a seller of merchandise on the buyer for the price, and placing to the seller's credit the amount thereof, and receiving the bill of lading properly assigned, may not hold the seller liable on the draft on the failure of the buyer to pay, unless it protests the draft for nonpayment, or brings suit therefor against the seller at the first term of court after nonpayment, or at the second term on showing good cause why suit was not brought at the first term, but it may not charge the seller's account with the amount paid by it for the draft.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1113–1128; Dec. Dig. § 408.*]

2. BANKS AND BANKING (§ 126*)—RECEIVING DRAFTS FOR COLLECTION—RIGHTS AND LIABILITIES.

A bank taking a draft drawn by a seller of merchandise on the buyer for the price for collection, and giving the seller credit therefor, may, when payment of the draft is refused, charge the seller's account with the amount and return the draft to him.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 305, 309; Dec. Dig. § 126.*]

3. TRIAL (§ 143*)—ISSUES—CONFLICTING EVIDENCE—DIRECTION OF VERDICT.

Where the evidence is conflicting on an issue, it is not error to refuse a directed verdict.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 342, 343; Dec. Dig. § 143.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

4. EVIDENCE (§ 99*) — APPEAL AND ERROR (§ 1050*)—RELEVANCY.

Where the testimony was conflicting on the question of the liability of defendant, the admission of testimony of plaintiff that before suing defendant he had consulted lawyers and had been advised by them to sue defendant and not another, and that they believed that defendant was responsible to plaintiff, was error and was ground for reversal because liable to have influenced the jury in arriving at their verdict for plaintiff.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 123, 137–143; Dec. Dig. § 99;* Appeal and Error, Cent. Dig. §§ 4153–4160, 4166; Dec. Dig. § 1050.*]

Appeal from Harris County Court; Clark C. Wren, Judge.

Action by H. E. Townsend against the Merchants' National Bank of Houston. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Lane, Wolters & Storey, of Houston, for appellant. Green & Boyd, of Houston, for appellee.

PLEASANTS, C. J. This suit was brought by appellee against appellant to recover the sum of $390.89 claimed to be due him by appellant. The cause of action is thus alleged in plaintiff's petition:

"For cause of action and ground of relief, plaintiff respectfully represents and shows to the court that heretofore, to wit, on or about the 7th day of June, 1909, plaintiff made and entered into a contract with T. D. Randall & Co., a firm doing business in the city of Chicago, state of Illinois, by, through, and under the terms of which he (the plaintiff) contracted and agreed to sell and ship to the said T. D. Randall & Co. of Chicago a car load of Irish potatoes of a certain kind and quality; that in consideration thereof, and as a purchase price therefor, the said T. D. Randall & Co. contracted and agreed to pay to plaintiff at Houston, Tex., the sum of $390.89; that to the end of fulfilling said contract and agreement, and in pursuance thereof, plaintiff procured said car load of potatoes and loaded same in a car of the International & Great Northern Railroad Company at the town of Spring, Tex., and consigned same to the said T. D. Randall & Co., at Chicago; that plaintiff received from the agent of the said International & Great Northern Railroad Company a bill of lading for the shipment of the said car load of potatoes, showing that said shipment was made subject to shipper's orders; that plaintiff, upon the loading of said car for shipment, immediately telegraphed the said T. D. Randall & Co. notifying them thereof, and requested that they (the said T. D. Randall & Co.) accept his draft on them for said sum of money, and to notify the defendant, the Merchants' National Bank, by wire of said acceptance and have the defendant pay same. Plaintiff further says that on the said 7th day of June he drew a sight draft

through defendant, the Merchants' National Bank, on the said T. D. Randall & Co. of Chicago, Ill., for the said sum of $390.89, the same being the purchase price of said car load of potatoes, which said draft was made payable to the order of the said defendant; that the said T. D. Randall & Co. did by then and there notifying the said defendant by telegram that they, the said T. D. Randall & Co., would pay plaintiff's draft on them for said sum of money, thereby requesting and directing the defendant to pay plaintiff the said sum on said draft.

"Plaintiff says that the said defendant, upon the said acceptance of said draft by the said T. D. Randall & Co., and upon said telegram paid to plaintiff the said sum of $390.89, the amount of said draft, which said money the plaintiff then and there in due course of business deposited with said defendant, which defendant then and there placed to plaintiff's credit subject to the orders and demands of plaintiff; that defendant thereby and on account of which became indebted to and promised to pay plaintiff said sum of $390.89; which said money the defendant, though often requested, has failed and refused to pay, to plaintiff's damage. That at the time of the transaction herein complained of, plaintiff was and had been for a long time prior thereto doing his banking business with said defendant, keeping his money on deposit with defendant, and checking against same in due course of banking business.

"That plaintiff upon the payment of said draft indorsed, transferred, and assigned said bill of lading attached to said draft, and delivered same to said defendant together with all his right, title, and interest in and to said car of potatoes, thereby transferring and assigning to defendant the control, management, shipment, and disposition of same.

"In complaining herein, plaintiff further says that, should it be contended or appear that plaintiff retained any interest whatever in said property or the shipment thereof (which is not admitted but denied), then plaintiff says that, upon the payment of said draft and the acceptance of said bill of lading, defendant undertook and assumed the control, management, and disposition of said shipment, and agreed to sell said car of potatoes for the purchase price as above stated, and to account to plaintiff for same; that, notwithstanding defendant took possession of said property and assumed the control and disposition thereof, and notwithstanding its agreement and promise to sell same and account to plaintiff therefor, it willfully and negligently failed and refused to do so; but, on the contrary, has negligently permitted whatever interest plaintiff had therein, if any, to be wasted and destroyed, to plaintiff's damage.

"For further cause of action plaintiff says

and represents that, several days after said shipment and transfer and delivery of said bill of lading and draft as aforesaid, he was notified by the said T. D. Randall & Co., consignee, that they would not accept or receive said car of potatoes; that immediately upon receiving said notice plaintiff informed the said defendant, through J. T. McCarthy, its cashier and duly authorized agent, of said refusal upon the part of the said T. D. Randall & Co., whereupon the defendant, acting through its said agent, stated, in substance, that we (meaning defendant) paid the draft upon the telegram sent us by the said T. D. Randall & Co., which was unconditional; that said defendant then and there requested and directed plaintiff to notify them, the said T. D. Randall & Co., at once that the defendant had paid the draft, and that plaintiff had no further interest in the matter, and for them to take it up with the defendant; plaintiff says that, upon receiving said instructions and directions from the defendant, he immediately notified the said T. D. Randall & Co. that the defendant, the Merchants' National Bank, had paid the draft on their telegram; that the plaintiff had no further interest in the matter; and that the same was out of his hands and to take the matter up with the defendant. Plaintiff says that, for the reason and on account of the statements, representations, actions, and doings of said defendant as set out in the above and foregoing paragraph, he took no further steps in protecting his interest (if any he had) in said car of potatoes; that thereby and on account of same plaintiff was induced to believe and did believe that he had been paid for said shipment. That, but for said statements, representations, actions, and doings of defendant, plaintiff could and would have protected his interest (if any he had), and could and would have sold same for the said sum of $390.89. Plaintiff says that, because of said statements, representations, action, and doings of defendant in causing him to take no action in protecting his said interest, and in causing him to lose same, defendant is forever precluded and estopped from setting up or urging any defense whatever to the claim or demands of plaintiff herein to his damage in the sum sued for."

The defendant answered by general demurrer and general denial, and specially pleaded that said draft was received by it for collection; that at the time of its receipt credit was given to plaintiff for the amount thereof, subject to final payment; that the draft was refused payment by T. D. Randall & Co. after being presented to them in due course of business; and that thereupon the amount thereof was charged back to account of plaintiff.

Defendant alleged that said draft was received by it only as a collecting and forwarding agent, and denied that it ever made any representations to plaintiff calculated to mislead him as to the true situation of the draft and its final payment; and that any representations made by defendant to plaintiff relative thereto were made solely for the benefit of plaintiff.

Defendant pleaded that if, in truth, its cashier made such representations as it was alleged to have made in plaintiff's petition, then such representations were ultra vires, void, and not binding on defendant.

The trial in the court below with a jury resulted in a verdict and judgment in favor of plaintiff for the amount claimed by him. The evidence is conflicting upon the issue of whether the appellant bought the draft from appellee or only took it for collection.

[1] If the draft was sold to appellant, in order to hold the appellee liable upon the failure of the acceptor to pay, appellant was required to protest the draft for nonpayment or to bring suit therefor against the appellee at the first term of the court after such nonpayment or at the second term and show good cause why suit was not brought at the first term, and was not authorized to charge appellee's account with the amount paid by it for the draft.

[2] If on the other hand the draft was only taken by appellant for collection and appellee given credit therefor, appellant had the right, when payment of the draft was refused, to charge appellee's account with the amount and return the draft to him.

[3] The evidence being in conflict upon this issue, the trial court did not err in refusing to instruct the jury to return a verdict for the defendant.

[4] Upon the trial, appellee was allowed to testify, over the objection of appellant, that before bringing this suit he had consulted lawyers and had been advised by them not to sue Randall & Co., but to sue appellant, and that, from what they had learned about the matter, the bank was responsible to appellee. Judge Hamblen of Houston was mentioned by appellee as one of the lawyers consulted by him. This testimony was clearly inadmissible, and, in view of the conflict in the testimony upon the issue of appellant's liability, it might reasonably have influenced the jury in arriving at their verdict, and therefore its admission cannot be regarded as harmless error. We do not think the issue of estoppel was raised by the evidence, and the court should not have submitted that issue in his charge to the jury. If the cashier of the bank made the representations and agreements as testified by appellee, the bank purchased the draft and did not take it for collection only. If he did not make said agreements, and only took the draft for collection, he did or said nothing to mislead appellee and no estoppel was shown.

There is no evidence that the draft was purchased by appellant "with the understand-

ing and agreement that said bank would thereafter relieve plaintiff from all liability thereon," and the court should not have submitted such issue to the jury. If, however, the draft was purchased by the bank, its failure to protest it for nonpayment or to bring suit thereon within the time prescribed by the statute released appellee from liability, and for this reason the erroneous submission of the issue of whether the bank agreed to release was harmless.

We think none of the remaining questions presented by appellant's brief require discussion. For the reasons indicated, the judgment of the court below is reversed and the cause remanded.

Reversed and remanded.