# CHARLESTON.

ALBERT CATTARUZZA *v.* FIRST NATIONAL BANK OF WILLIAMSON

(No. 6226)

Submitted November 20, 1928.  Decided December 4, 1928.

*Samuel A. Christie, Sidney L. Christie* and *Ira J. Partlow,* for plaintiff in error.

*E. A. Hansbarger,* for defendant in error.

MAXWELL, JUDGE:

After having changed his residence from Mullens to Williamson the plaintiff, being desirous of transferring his savings account of $1,028.05 from the Bank of Mullens to the defendant, went to the banking house of the defendant at Williamson on the 9th day of April, 1927, stated his desire aforesaid and requested that his check on the Bank of Mullens be honored by the defendant and that he be paid in cash a small portion of said amount and that the residue be deposited to his credit in the savings department of the defendant. The representative of the defendant with whom plaintiff talked declined to do this because the plaintiff was a stranger. But the plaintiff was told if he would draw his check on the Bank of Mullens and leave it together with his pass book with the defendant that defendant would undertake to make collection from the Bank of Mullens, and that after the account should thus be transferred to the defendant, the plaintiff would be given credit herefor and could make withdrawals of such portions as he desired. Pursuant to the said arrangements the defendant on the date aforesaid forwarded to the Mullens bank the plaintiff's check in the full amount of his savings account aforesaid, and his pass book, together with a formal collection letter. This communication was

received by the Bank of Mullens on the 12th day of April, and on that date the cashier issued his check on the said bank in the said amount and forwarded it at once by mail to the defendant, the same being received by the defendant on the following day. On the date of the receipt of the cashier's check the defendant paid to the plaintiff in cash the sum of $100.00, and gave him credit on its books in its savings department for the sum of $928.05, and delivered to the plaintiff a pass book showing said deposit. On the 16th the plaintiff withdrew $50.00, and on the 19th he withdrew $80.00, making total withdrawals of $230.00.

Immediately on receipt of the said cashier's check on the 13th of April, the defendant forwarded the same for collection through usual channels. It did not reach the Bank of Mullens until the 20th day of April, which latter bank, though it had continued open for business through the 19th, did not open for business on the 20th, because of action taken by the Commissioner of Banking of the State of West Virginia. The check was then returned to the defendant through the channels by which it had been transmitted to the Bank of Mullens. Thereafter, the defendant declined to permit the plaintiff to make any further withdrawals from the account which he had opened with the defendant as aforesaid and demanded of him that he repay to it the aforesaid aggregate of withdrawals which it had permitted him to make before it had ascertained that the check of the cashier of the Bank of Mullens would not be paid.

In this suit, wherein the plaintiff demanded judgment against the defendant for the sum of $798.05 being the balance of the deposit aforesaid, the defendant denied liability and filed a special plea of set-off or counterclaim asserting its right to recover of the plaintiff the aggregate of the withdrawals aforesaid, $230.00, with interest. On a trial of the action before the court without a jury, judgment was entered that the plaintiff was not entitled to a recovery from the defendant, but that the defendant, under its counterclaim, was entitled to a recovery from the plaintiff, and thereupon judgment was rendered in favor of the defendant against the plaintiff for the sum of $238.21, with interest and costs.

To that judgment the plaintiff prosecutes this writ of error.

On the question of the liability of a correspondent bank to the owner of a check deposited with it for collection, the decisions of the several states are in irreconcilable conflict. This situation is discussed by the Supreme Court of the United States in *Exchange National Bank* v. *Third National Bank*, 112 U. S. 276, 28 Law. Ed. 722; and *Federal Reserve Bank of Richmond* v. *Malloy et al.*, 264 U. S. 160, 68 Law. Ed. 617. One line of cases holds the correspondent or collecting bank responsible to the owner. On the other hand, a great number of states, exonerates the collecting bank of liability to the owner unless it be guilty of negligence. In the former group of cases recognition is given to the often stated but not universally recognized principle that a collecting bank may not justify its action if it accepts in payment of a check or other commercial paper left with it for collection anything other than legal tender.

We are of opinion that the more liberal view is in harmony with the modern practices and requirements of business and of banking. The great mass of business today is transacted on exchange and not with actual money. To require a collecting bank which, for the accommodation of a patron, has undertaken to collect for him a check or other commercial paper which he has left with it for that purpose, to accept nothing but legal tender, otherwise to assume all hazard attending the collection, would place not only on the bank but on business generally, a requirement attended by great inconvenience and delay, and accompanied by greatly increased expense of collection. It would be impracticable and not in harmony with the trend of modern business. The custom prevailing among banking institutions of transacting business by means of checks, credits and exchanges is of such general and universal nature that courts take judicial notice thereof. *Hilsinger* v. *Trickett*, (Ohio), 99 N. E. 305. In the case at bar, however, the general knowledge which the court shares in common with other men on this subject is supplemented by the agreed statement of facts as follows: "That as a usual thing when a check and pass book is sent to a bank along with a collection letter of the kind above described, the

payment bank sends its draft drawn on another bank, such draft being sometimes called exchange, but that sometimes a cashier's check is sent by the paying bank instead of a draft or exchange on another bank; that the usual and proper custom is for the paying bank to send its draft or exchange on another bank.''

In making the defendant his agent for the collection of his savings account at the Bank of Mullens, the plaintiff, in the absence of any special understanding or arrangement to the contrary, must be held to have anticipated that the bank would employ the usual methods obtaining in such transactions and to have assented thereto, provided, of course, that such banking procedure was reasonable and within recognized banking methods. The above cited case of *Hilsinger* v. *Trickett,* is authority for all these propositions. We quote only syllabus point seven: ''It is not negligence *per se* for a collecting bank, in the absence of instructions to the contrary, to accept in conditional payment of a certificate of deposit a draft or check of the issuing bank, where such is the custom of banks in the vicinity.'' Pertinent cases in this connection are *Jefferson County Savings Bank* v. *Commercial Nat'l. Bank,* (Tenn.), 39 S. W. 338; *Wilson* v. *Bank,* (Ill.), 58 N. E. 250.

In the case at bar the defendant acted promptly in forwarding the plaintiff's check and pass book to the Bank of Mullens, and, on receipt of the cashier's check, the defendant acted with equal promptness in transmitting it for collection. In each instance it followed approved and customary banking methods. There was no negligence.

There is thus presented, in final analysis, a situation controlled by the law as stated and applied in our case of *Pinkney* v. *Kanawha Valley Bank,* 68 W. Va. 254, wherein it is declared: ''If the holder of a check indorses it, and deposits it for credit and collection in another bank, the collecting bank, if the check is not paid, and it is without fault in forwarding it for payment, has the right, on its return, to charge it back to its customer or recover the amount if he has in the mean time withdrawn the money.'' This is buttressed by the cases of many jurisdictions. We cite a few only: *Merchants*

*Nat'l. Bank* v. *Townsend,* (Tex.), 147 S. W. 617; *Re State Bank,* (Minn.), 57 N. W. 336; *Waggoner Bank and Trust Co.* v. *Gamer Co.,* (Tex.), 213 S. W. 927; *Bank of Big Cabin* v. *English,* (Okla.), 111 Pac. 386; *Dickerson* v. *Watson,* 47 N. Y. 439; *Scott* v. *The Ocean Bank,* 23 N. Y. 289; *Hazlett* v. *Commercial Nat'l. Bank,* (Pa.), 19 Atl. 55.

The judgment of the circuit court will be affirmed.

*Affirmed.*