# Merchants' National Bank of Philadelphia *versus* Goodman et al.

A bank with which a check is deposited by a customer for collection, under an agreement that the depositor's responsibility as indorser is to continue until payment is ascertained by the bank, is bound to transmit such check to an independent agent for collection with instructions to present the same for payment, and if payment be refused to have the same protested and returned at once. It is not warranted in sending such check to the bank itself on which it is drawn, and in accepting from said bank a draft on some other bank in payment. When it does so and the original check is cancelled, and the account of the drawer charged with the amount thereof, and afterwards by reason of the failure of the bank on which the check was drawn, the draft remains unpaid, the bank is responsible to the depositor.

March 31st, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GREEN, J., absent.

ERROR to the Court of Common Pleas No. 1, of *Philadelphia county:* Of July Term 1884, No. 151.

Assumpsit, by Samuel Goodman, W. E. Goodman and Joseph Goodman trading as Harrington & Goodman, against the Merchants' National Bank.

The following case stated was agreed upon by the parties:—

[Bank v. Goodman.]

On the thirtieth day of October, 1883, the defendants in error opened an account as depositors with the plaintiff in error, and they then received from the plaintiff in error a bank book, upon the first page of which was printed the following notice :—

### NOTICE.

"In conformity with the rules adopted by all the banks of this city, members of the Clearing House Association, you are hereby notified that you are held responsible as endorser for the non-payment of all cheques upon other banks of this city, members of said association, deposited by you as cash in this bank, until the close of the business day next succeeding that on which such cheques are deposited. This bank receiving such cheques only for collection on your account through the exchange at the Clearing House. Upon all other cheques and drafts deposited by you as cash, your responsibility as endorser continues until payment has been ascertained by this bank."

On the 14th November, 1883, the defendants in error deposited with the plaintiff in error as cash a cheque for $489.20, and dated November 11th, 1883, drawn by Ruhman & Co. on the Mississippi Valley Bank, a bank doing business at Vicksburg, in the state of Mississippi. On the same day the plaintiff in error remitted that cheque by letter to the Mississippi Valley Bank, requesting payment thereof. On 19th November, 1883, the cashier of the Mississippi Valley Bank mailed to the plaintiff in error a letter inclosing in payment for the cheque, a draft of the Mississippi Valley Bank upon the Hanover National Bank of New York city, dated 19th November, 1883, to the order of the cashier of the plaintiff in error for $489.20. The Mississippi Valley Bank was doing business on the said nineteenth day of November, 1883, but it failed on some day thereafter, and the plaintiff in error was not advised of the failure until it received the hereinafter-mentioned letter of 26th of November, 1883, from the Hanover National Bank of New York. The letter from the Mississippi Valley Bank was received by the plaintiff in error in due course of mail on the 24th of November, 1883, and on the same day the plaintiff in error remitted the draft to the Hanover National Bank of New York for payment. On the 26th of November, 1883, the Hanover National Bank of New York returned that draft to the plaintiff in error, notifying the plaintiff in error that there were no funds on deposit with it to the credit of the Mississippi Valley Bank. The plaintiff in error at once notified the defendants in error in the following terms: "In return for cheque received from you on Mississippi Valley Bank, Vicksburg, we have received the draft of the bank on Hanover

National Bank, N. Y., but there are no funds provided at that bank to meet the same. Shall we order the cheque on Vicksburg returned, that you may receive the money from your customer?" and on the 28th November, 1883, the defendants in error wrote to the plaintiff in error as follows:—

"In reply to yours just received, please order returned the cheque of the Mississippi Valley Bank. We have written our correspondent there in regard to the matter, but have not received any reply as yet. Do you wish us to send cheque now and cover the amount of the deposit, or shall we await the return of the one deposited?"

The plaintiff in error then wrote to the Mississippi Valley Bank calling for the return of the cheque remitted to it, and in reply receiving a letter from E. S. Butts, receiver of the bank, dated 4th December, 1883, saying: "The cheque you call for cannot be returned, as it was paid, charged to drawer's account, and cancelled. Exchange was remitted you for it, but unfortunately was not paid, the Mississippi Valley Bank having failed. Your claim then stands only as an ordinary debt against that institution. The assets may reach $200,000, while the liabilities will largely exceed $1,000,000."

Upon the case thus stated the court below entered judgment against the plaintiff in error for $489.20, with interest from 22d December, 1883, ALLISON, P. J., delivering the following opinion:—

Upon the foregoing statement of admitted facts, the majority of the court agree that judgment should be entered in favor of the plaintiffs on the case stated.

This conclusion is reached, whether the transaction is to be treated as the purchase of the checks by the Merchants' National Bank from the plaintiffs, the check having been received and credited by the bank as cash, or whether, under the terms of notice which appear on the first page of plaintiff's deposit bank book, the transaction is to be considered as a deposit of the check for collection on plaintiff's account. If the latter view be adopted, the defendants must be regarded as having advanced to the plaintiffs the amount of money for which the check called, until it could be ascertained whether it would be paid upon presentation to the Mississippi Valley Bank. In whatever light it may be viewed, the parties to this action stand to each other in the relation of endorser and endorsee, the endorsee being required to demand and entitled to receive payment from the maker of the check. The contention on the part of the plaintiffs is, that sending the check, to the bank on which it was drawn for payment, is not such a demand as will release the endorsee from liability to the en-

dorser, when, as it is here admitted, the bank to which it was sent for payment does not return the money for the check, nor the check itself, but cancels it on the theory that it has been paid, by charging the account of the drawer with the amount of the check, surrendering the possession of it to him, or at least entitling him to have it delivered up to him, as paid and cancelled.

That it was regarded as having been paid, appears by the letter of the receiver of the Mississippi Valley Bank of December 4th, 1883, which is made part of the case stated, in which he writes, "It was paid, charged to drawer's account and cancelled."

By reference to the notice, which appears in the first printed page of the case stated, it will be seen, that checks on banks of this city, connected with the Clearing House Association, would be received by the defendant bank only for collection on the depositor's account. The second clause of the notice provides, that on all other checks and drafts deposited as cash your (the depositor's) responsibility as endorser continues until payment has been ascertained by the bank.

Both classes of checks were required to be endorsed by the depositors; upon the first class such liability continued until the close of the business day next succeeding that on which such checks were deposited. And upon the second class, until payment has been ascertained by the Merchants' National Bank. The defendant, therefore, accepted the checks as cash, holding the plaintiffs, as endorsers, responsible to them in case it should not be paid on presentation to the bank on which it was drawn.

Whatever may have been the rights of the defendant as the holder of the check received under the circumstances set forth in the case stated, in the opinion of a majority of the judges, their duty under the law, required them to forward it to a correspondent or sub-agent, with instructions to present the same for payment, and if payment was refused, to have had it protested and returned at once to the defendant. Had this been done the rights of all parties would have been protected. The conclusion is a legitimate one, that had demand been made by an agent of defendant bank, the money for the check would have been paid to such agent, whose whole duty would have been performed by transmitting the proceeds of the check to the defendant bank who would thus have secured the advance which it had made to the plaintiffs, and the transaction as to all parties concerned would have been properly closed out. It must not be overlooked that the duty which the defendant bank undertook to perform in connection with the collection of the check was voluntarily assumed; it cannot,

therefore, complain if it is held not only to good faith, but also to the exercise of such diligence as would protect the rights of all parties. The law imposes no unreasonable obligation upon one who undertakes to do that which the defendant in this case undertook to perform. The entire measure of that duty was to transmit to a responsible agent for collection, and this the defendant could have done, or declined the performance of the obligation, if it had no correspondent or agent to whom it could have transmitted the check for collection from the bank on which it was drawn. Or it could have declined to accept the performance of any act connected with the collection of the check, except as acting under the instruction and at the risk of the depositor. This the defendant did not do, but assumed the responsibility of sending the evidence of the plaintiff's right to have the money for which it called collected for their benefit to the bank which was expected to make payment. Not obtaining the money, but a worthless draft in return, the defendant treating the check as not paid, charged the amount of it back to the plaintiff's account, and when they called for the check, as the best evidence of their right to recover against the maker, they are informed, the check you call for cannot be returned; it was paid, charged to the drawer's account and cancelled.

We do not regard it as a fulfilment of the proper measure of the defendant's duty in the premises, that they sent the check to the Mississippi Valley Bank directly for payment; nor can we agree that a custom such as is here sought to be set up can be successfully pleaded, as a defense by the endorser against the endorsee of a check, under circumstances like those which it is admitted exist in this case. That such a course is frequently adopted may be admitted, but when it is followed it is at the risk of the agent, who, of his own choice, transmits the evidence of indebtedness upon which the right to demand payment depends to the party who is to make the payment, instead of forwarding it to a sub-agent, with express or implied instructions to do all that is required by way of demand for payment, protest when payment is refused, and return the instrument to the party from whom it had been received.

The agreement to transmit for collection is a contract between the bank and its customer; the valuable consideration which supports the agreement as a contract, is the use of the money to be collected by the bank so long as it shall be allowed to remain in their hands after it has been collected. This binds the collecting bank to do all that is incumbent on them to do; and that entire duty, as we have said, is discharged when the check or draft is transmitted to a responsible sub-

[Bank v. Goodman.]

agent to collect the money. The agent to whom the instrument is sent to make demand for payment, then becomes the agent of the depositor or endorser, and is liable to such depositor for loss arising from failure on his part to perform the duty which is incident to an undertaking to collect the money; and such duty is not discharged when anything but money is accepted as payment, in the absence of special authority to the contrary. The law as we have stated it, is well settled on the authority of decided cases in this country. In the state of New York, only, does a different rule prevail. There, on the authority of Allen v. The Merchants' Bank of New York, 15 Wendell, 482, and 22 Wendell, 215, it is held that the agents at the place of collection are the agents of the bank receiving the deposit, and not of the depositor.

In our own state the principle has, in several instances, been maintained that a collecting bank is an agent for transmission to a sub-agent to collect, and when this is properly done, its duty is performed and its responsibility is at an end.

In the case of the Mechanics' Bank v. Earp, 4 Rawle, 386, the undertaking was to transmit the bills with instructions upon them to their correspondents. The court held the defendants did not undertake to collect the bills, but were used as the medium of communication between the depositors and the collecting bank in Virginia. In Bellemire v. The Bank of United States, 4 Wharton, 105, GIBSON, C. J., says: "In the case of Mechanics' Bank v. Earp, it has been ruled that a bank employed to transmit for collection, is bound to concern itself with the act of transmission alone, and that its correspondent becomes the agent for subsequent measures." What the bank undertook to do was to put the note in the ordinary channel of collection, and it performed its undertaking, when, for the purpose of presentation and notice, it put it into the hands of its own notary. In Wingate v. Mechanics' Bank, 10 Barr, 104, the same doctrine is asserted, recognizing the authority of the Bank v. Earp, *supra*. In Bradstreet v. Everson, 22 P. F. S., 124, the rule is again recognized, but that case was held not to come within the rule, because the agreement was that of an attorney undertaking the collection of the demand by the express terms of the receipt.

The leading case, perhaps, on this subject, is that of the Bank of Washington v. Triplett, 1 Peters (U. S. S. C.) 25, in which MARSHALL, C. J., says: "That Triplett having deposited a bill with a bank in Alexandria to be collected in Washington, the Alexandria Bank forwarded the bill to the Bank of Washington, which, by negligence, failed to collect the bill." By transmitting the bill, as directed, the bank with whom it was deposited performed its duty, and the whole responsibility

of collection devolved on the bank which received the bill for the purpose. To the same effect are 23 Pickering, 330; 1 Cushing, 182; 12 Conn., 303; 25 Ill., 247; 1 Otto, 308.

The weight of authority preponderates greatly in support of the doctrine that it was the duty of the defendant to transmit to a suitable agent to collect, and it seems to us that the Mississippi Valley Bank, on whom the check was drawn, was in no sense a suitable agent to demand payment against itself; its interest plainly was to delay instead of speeding payment. The defendant put it in the power of the Mississippi Valley Bank to do what it pleased with the check, and that which it did please to do, on the eve of insolvency, was to cancel and surrender the check, and to transmit, not money, but a worthless draft in payment.

We think the principle may be stated as a true one, as the plaintiff's counsel have presented it—that no firm, bank, corporation or individual, can be deemed a suitable agent, in contemplation of law, to enforce in behalf of another a claim against itself.

The only safe rule is to hold that an agent with whom a check or bill is deposited for collection, must transmit to a suitable sub-agent to demand payment in such manner that no loss can happen to any party, whether he be depositor and indorser or the indorsee and holder. In this instance had the demand for payment been made by such agent, the amount of the check would have been collected over the counter of the Mississippi Valley Bank. It was doing business on the nineteenth day of November, 1883, and the cancellation of the check on that day shows there was money of the drawer in bank sufficient to pay the check.

We interpret the cases to which we have referred as establishing the rule of transmission to a suitable correspondent or agent, to mean that such suitable agent must, from the nature of the case, be some one other than the party who is to make the payment. By no other rule can the rights of indorsers be protected, if it is the interest of the party who is to make payment, to hinder, postpone or defeat payment. This imposes no hardship on the institution undertaking to transmit for collection, which can always protect itself by stipulating that special instructions by the depositor shall be given, which will save the collecting bank from all risk or peril.

Entertaining the views as above stated, we enter judgment, on the case stated, in favor of the plaintiff, for the sum of $489.20 with interest from the twenty-second day of December, 1883. PEIRCE, J., filed a dissenting opinion.

The defendant took this writ of error, assigning for error that the court erred in deciding that, upon the case stated, the

plaintiff in error was legally liable to the defendants in error for the failure of the Mississippi Valley Bank to pay the amount of the check of Ruhman & Co., deposited by the defendants in error with the plaintiff in error, and by the latter remitted to the Mississippi Valley Bank for payment; and in entering the said judgment for plaintiff.

*Christopher Stuart Patterson,* for the plaintiff in error.—The defendant was in no respect negligent. On the day on which the check was deposited with it, it transmitted it to the Mississippi Valley Bank at Vicksburg, at which it was payable, requesting payment. That bank was then doing business, and there was no reason to doubt its solvency. The fact that the plaintiff had deposited as cash the check drawn on that bank justified the defendant in assuming that bank to be both solvent and responsible, and it is obvious that time was saved by transmitting the check directly to that bank, without the intervention of any intermediate agency. The defendant in its letter of transmission demanded payment of the check. It was not its duty to prescribe the mode of payment. It was not its duty to ask the Mississippi Valley Bank to remit legal tender notes or gold coin.

Such a mode of remittance would have been inconsistent with the usual and known customs of the banking business, would have involved an expense which neither the defendant nor the Mississippi Valley Bank could be asked to bear, and which the plaintiffs never intended should be borne, either by themselves or the defendant, and would have rendered the defendant liable for the coin or notes if lost in the course of transmission.

If the plaintiff's loss has resulted from the fact that the bank in Vicksburg remitted a draft which has since been found to be uncollectible, the negligence was that of the Vicksburg Bank, and not that of the defendant. On the day of the receipt of the draft from Vicksburg, the defendant remitted it to New York for collection, and on its return dishonored, the defendant at once notified the plaintiff. There has, therefore, been no possible negligence on the part of the defendant.

The cases show that the defendant cannot be held responsible for the negligence, if any there was, on the part of the Bank of Vicksburg: Bank of Washington v. Triplett, 1 Pet. (U. S. S. C.), 25; Mechanics' Bank v. Earp, 4 Rawle, 386; Bellemire v. Bank of U. S., 4 Whart., 105; Lee v. Bank of West Chester, 1 Chester Co. Rep., 109; Fabens v. Mercantile Bank, 23 Pick., 330; Lawrence v. Stonington Bank, 6 Conn., 521; East Haddam Bank v. Scovil, 12 Id., 303.

I concede that the cases in New York maintain a contrary

doctrine. The leading case is Allen *v.* Merchant's Bank of New York, 15 Wend., 82; 22 Id., 215. In that case, the Court of Error reversed, 14 senators voting for reversal, and Chancellor WALWORTH and 9 senators voting for affirmance. I submit that, upon principle, the reasons of the dissenting judges are more convincing than those stated by Senator Verplanck. The case has also been criticised in other states: Dorchester *v.* New England Bank, 1 Cush., 187; Ætna Ins. Co. *v.* Bank, 25 Ill., 247; Morse on Banking, 353.

Thus far the cause has been argued without reference to the terms of the notice in the plaintiff's bank book, which notice entered into and became part of the implied contract between the plaintiffs and the defendant. That notice in terms bound the plaintiffs to liability, as indorsers upon the check, " until payment has been ascertained " by the defendant; that is, until the defendant learned that the amount of the check had actually been paid to it or for its account. The check was paid as between the Mississippi Valley Bank and Ruhman & Co., when its amount was charged by that bank against the deposit account of that firm, but although that bank mailed the New York draft to the defendant in payment for the check, the defendant never agreed to accept that draft as payment, and an express agreement to that effect was necessary to constitute that draft a payment of the amount of the check to the defendant: Cumber *v.* Wane, 1 Sm. L. C., 457; Hays *v.* McClurg, 4 Watts, 452; Weakly *v.* Bell, 9 Id., 273; Darlington *v.* Gray, 5 Whart., 487; Dougherty *v.* Hunter, 4 Sm., 382. If that draft on New York had been honored, then, and not until then, the defendant would have ascertained payment. That draft not having been honored, the defendant has not yet ascertained payment, and the plaintiffs are still bound to the defendants as indorsers. If the check had been lost in its transmission by mail to the Mississippi Bank, the plaintiffs, under the terms of the notice, would have had to make good the amount to the defendant; so also the check having been lost by its payment and cancellation at the Mississippi Bank, that loss, under the terms of the notice, must be borne by the plaintiffs.

The primary function of a bank of deposit is the reception and safe custody of its depositors' money, and the disbursement of that money, in payment of its depositors' checks. It is only as a favor and convenience to its depositor that a bank receives as cash that which is not cash. Especially is this true of checks payable in a distant city. To hold a bank, in the absence of an express agreement made upon an adequate consideration, liable as a collecting agency with regard to such checks, is neither reasonable nor just. If such is to be the

rule of law, banks must either refuse to take upon deposit, or receive for collection bills and checks payable at distant places, or they must charge such rates of collection as will adequately compensate them for the services rendered, and indemnify them against the risks incurred ; and in either event, their customers will be inconvenienced by the change in the manner of doing business.

The English case of Russell v. Hankey, 6 Term Reports, 12, is almost identical with this in its main facts. The defendants were bankers in London, in correspondence with the plaintiffs, their customers in the country. The bills in question, which had been indorsed to the plaintiffs in the course of negotiation, had been transmitted by them to the defendants in order to obtain payment from the acceptors, who resided in London, and to carry the amount to the account of the plaintiffs. The defendants accordingly tendered the bills to the acceptors for payment, when he gave them a check upon a banker in London for the amount, upon the receipt of which check they delivered up to the acceptor the bills in question. It turned out that the check was dishonored, the person on whom it was drawn having no account with the drawer. Upon these facts, which were not disputed, the plaintiffs contended that the defendants had been guilty of negligence, in giving up the bills for the check they had received in payment without previously inquiring whether or not the check would be honored. The defendants, on the other hand, insisted that they had only done what was usual in the ordinary course of trade and business of bankers, and therefore ought not to be answerable for the event ; and Lord KENYON being clearly of the latter opinion, the plaintiffs were non-suited. Erskine moved to set aside the nonsuit upon the ground before stated. But, PER CURIAM : " We dare not even grant a rule to show cause, as it would be putting the whole trade of London in suspense pending it. There is no ground to impute negligence to the defendants."

*Samuel B. Huey* (*J. R. Adams* with him), for the defendant in error.—Where money is deposited in a bank by a customer, the relation of debtor and creditor is created. The notice printed in the bank book does not affect that relation.

But, granted that the notice was of the essence of the contract, it would then be binding only according to its express terms, which merely postpone the application of the law until " payment has been ascertained by the bank." And if, because of that notice, Harrington & Goodman's liability on that check continued until the bank had " ascertained payment," certainly, by virtue of that notice, if for no other

reason, the bank's liability arose the instant the check was surrendered for the draft on New York; for it cannot be denied that the receipt of the draft by the bank was notice that the bank remitting the draft had in its possession cash to meet the check, and that had the cash been demanded, it would have been paid over the counter on the day the check was presented. The notice therefore establishes Harrington & Goodman's right to recover, for, in contemplation of law, the check was actually paid to the Merchants' Bank when the bank on which it was drawn received it, gave to the Merchants' Bank a draft on a New York bank for it, credited the check to the Merchants' Bank, charged the Merchants' Bank with the draft, cancelled the check, charged it to the maker's account, and surrendered it to the maker.

The bank can only escape liability by returning to Harrington & Goodman the check properly protested, or the money. The bank has surrendered the check and thereby discharged the maker, and hence the money should be forthcoming.

The dissimilarity between the cases relied upon by the able counsel for the defendant and this case consists in the very important fact that in all those cases the contract was expressly and solely to transmit and not to collect.

Mr. Justice STERRETT delivered the opinion of the court, October 5th, 1885.

For reasons fully and clearly expressed in the opinion of the learned president of the Common Pleas, we are satisfied the judgment of that court in the case stated is correct.

Judgment affirmed.

Chief Justice MERCUR dissented.