# Savings Institution of the City of Williamsport v. Folk, Appellant.

*Banks and banking—Check—Collection.*

1. Where a person requests a bank in which he is not a depositor to cash a check drawn on a bank in another city, and he takes the cash, although warned of the bad credit of the maker, and that he will be held liable on his indorsement if the check is returned, and the bank acting without negligence and in good faith transmits the check through its usual channels for collection, and it is returned unpaid, the bank may recover the amount of the check from the indorser, although it appears that one of the intervening banks taking advantage of the facts revealed by the check, entered up a judgment note against the maker and attached the whole deposit before the check was received by the bank on which it is drawn.

2. Although the amount of a check left with a bank for collection has been credited to a depositor's cash, it may be charged back to him in case it turns out to be worthless, unless the bank has been negligent, or has done something to mislead the depositor, thereby inducing him to act to his own injury.

Argued Feb. 25, 1908.   Appeal, No. 11, March T., 1908, by defendant, from judgment of C. P. Lycoming Co., March T., 1906, No. 483, on verdict for plaintiff in case of The Savings Institution of the City of Williamsport v. Ed Folk.   Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ.   Affirmed.

Assumpsit to recover the amount of a check.   Before HART, P. J.

The opinion of the Superior Court states the case.

The court charged in part as follows:

[All the savings institution was required to do was to place this check in the hands of a responsible agent for the purpose of transmission to the bank upon which it was drawn and presented there for collection.   And therefore, when the savings institution placed this check in the hands of a responsible bank it had fulfilled all the obligations that it had entered into with Ed Folk in the matter of the transmission of this check to the bank upon which it was drawn, and that therefore, under the evidence in this case, the plaintiff would be entitled to recover against Ed Folk, the defendant, the amount of the check, protest fees and interest, amounting in all to the sum of $399.15.] [1]

Defendant presented these points:

1. If, under all the evidence, the jury believes the plaintiff received the check in suit for collection, and that collection thereof became impossible because of the fraud or negligence of any bank or other agent through which plaintiff attempted to make such collection, the plaintiff cannot recover in this action, and the verdict must be for the defendant.   *Answer:* This point is refused. [2]

2. If, under all the evidence, the jury believes that the plaintiff was negligent in selecting the West Branch National Bank

as its agent to forward the check in suit to the bank on which it was drawn, or in repaying the West Branch National Bank the amount of said check after payment thereof had been refused by the bank on which it was drawn, the plaintiff cannot recover and the verdict must be for the defendant. *Answer:* This point is refused. [3]

The court gave binding instructions for plaintiff. [4]

Verdict and judgment for plaintiff for $399.15. Defendant appealed.

*Errors assigned* were (1–4) above instructions, quoting them.

*Max L. Mitchell,* for appellant.

*C. La Rue Munson,* of *Candor & Munson,* for appellee.

OPINION BY HEAD, J., February 26, 1909:

As to the material facts of this case there is but little, if indeed any, serious contention between the parties. At the time of the transaction which resulted in this suit, Folk, the defendant, was not a depositor in the plaintiff bank and had no commercial relations with it. He was a tenant of some real estate owned by it and was known to its active manager as a man of financial responsibility. In January, 1906, he presented, at the counter of the defendant, a check drawn to his order by one L. E. Bates, on a bank in Mahanoy City, for $360, and requested that it be cashed for his accommodation.

Either at this time or shortly before when a similar request had been made—there being some conflict of testimony on this point—the plaintiff's manager had advised the defendant that the financial standing of Bates was bad and warned him that if the check should be returned unpaid, the plaintiff would be compelled to hold him, the defendant, on his indorsement. The latter, however, persisted in his request for accommodation and indorsed the check. The plaintiff took it and, making no charge whatever for the favor, gave to him, in cash, the full amount called for by the check.

In accordance with its custom in handling foreign checks—

i. e., on banks outside the city of Williamsport—the plaintiff indorsed this check and turned it over to the West Branch National Bank, a long-established and reputable bank in the city, and received in turn the cash called for by it. The national bank caused the check to be promptly forwarded, through the usual channels and presented for payment to the drawee bank at Mahanoy City. Payment being refused the check was protested and notice thereof was, at once and in the usual way, given to all indorsers, including both plaintiff and defendant. The protested check was then returned by the same route it had gone, each indorsee in turn demanding and receiving from the next prior indorser the amount of it, with protest fees added, until it reached the plaintiff in whose possession it remains. Up until this time the plaintiff had no knowledge, nor had it received notice, from any source, of the reason for the refusal of the check by the bank upon which it was drawn.

We do not understand it to be alleged that in any or all of the facts thus far recited there occurred anything to relieve the defendant from the obligation created by his indorsement of the check. But it later appeared that, at the time of the transaction, the West Branch National Bank was itself a creditor of Bates, the drawer of the check, and held his past due judgment exemption note for $500 and interest.

The receipt by it of this check in the manner indicated, as well as some previous transactions of which its officers had knowledge, led them to conclude that Bates was maintaining a regular deposit account in the bank at Mahanoy City. They accordingly sent their note direct to the county seat of Schuylkill county, caused judgment to be entered thereon and an attachment execution to be issued. This was served on the bank shortly before the check was presented and, as the attachment covered practically all of the money on deposit, there were no funds available for the payment of the check and it was refused with the results already mentioned.

As we have seen, the plaintiff had no knowledge of any of these matters until after it had taken up the protested check. It neither did nor omitted to do any act, from the time it

cashed the check until it received it again protested, that tends to impugn its own good faith or diligence throughout the transaction. But, it is argued that, even if, looking only at the acts of the plaintiff itself, no negligence can be discovered, nevertheless the law casts upon it the responsibility for any lack of care or breach of duty on the part of any other bank, into whose possession the check came whilst on its route, along the usual channels of commerce, to its destination; and that in this obligation the defendant, who launched the check into the commercial current, has no part or share.

If this be sound it must be manifest that no bank could afford to accept a foreign check from its depositor—much less from a stranger—without a special contract of indemnity or the payment of a sum sufficient to insure the risk, or both. The serious effect, upon the business world, of such a declaration by a court can hardly be overestimated. Certainly none of the cases cited by the able counsel for appellant goes to such à length.

Under the established facts of this case we can see no room for the conclusion that the relation of the defendant and plaintiff was that of vendor and vendee; that the former sold and the latter bought a check, like any other commodity, and that the indorsement of the defendant carried no other covenant than an implied warranty of his title to the paper.

On the contrary we think when the defendant presented his check and requested, as an accommodation, the cash it called for, he must have contemplated that the plaintiff would transmit the check to the bank upon which it was drawn, for thus only could it finally get back the money it was about to advance. As no provision was made nor direction given for any special mode of transmission, it must have been further contemplated that it would be along some of the channels of trade and through some of the normal agencies ordinarily used by the commercial world; and the selection of such channels and agencies by the plaintiff, in good faith and with reasonable care, must be regarded as having received the implied approval of the defendant.

The present case, in its facts and the legal principles applicable

to them, closely resembles Rapp v. National Security Bank, 136 Pa. 426. In that case a stranger bought a bill of goods from a merchant in Philadelphia and offered in payment a check on a bank in New York, calling for a sum much larger than the bill, requesting that the difference be paid to him in cash. The merchant first sought the advice of his banker who told him the transaction looked dangerous and warned him that such was the method usually adopted by those seeking to negotiate fraudulent or worthless checks. The bank offered to transmit the check to New York in the usual way and see if it would be paid. The merchant indorsed it and left it and received credit for its amount in his account. Although the check had been, in fact, fraudulently raised in amount many hundreds of dollars, yet when it reached the drawee bank, in the regular course of business, as the signature was genuine, the drawer in funds and the work of the forger had been so skillfully done as to leave no apparent trace, it was paid. It was not until the bank book of the drawer was balanced, some weeks later, that the forgery was detected. Then, Mr. Chief Justice Paxson, speaking for the court, says, "The check was promptly started on its way back to Rapp & Sons, by the same channel it had been forwarded. We see no evidence of delay or negligence in this branch of the case and it needs no argument to show that each bank or person who received the money or a credit for this check was bound to restore it when the fraud was discovered." Again, "It has never been supposed that, when a bank credits a depositor with the amount of a check left for collection, it may not be charged back to him in case it turn out to be worthless. Such a rule would occasion much inconvenience to banks, and much more to their customers. Upon careful review of the case, we fail to find any evidence of negligence on the part of the bank. If there was negligence on the part of anyone, it was that of the plaintiffs themselves, in dealing in the manner they did with an entire stranger after warning to have nothing to do with him."

In Bank v. Strauch, 20 Pa. Superior Ct. 196, this court following Rapp v. Bank, used the following language, in an opinion by Orlady, J.: "Although the amount of a check left with a

bank for collection has been credited to a depositor as cash, it may be charged back to him in case it turns out to be worthless, unless the bank has been negligent, or has done something to mislead the depositor, thereby inducing him to act to his own injury, etc." These cases we believe to be in harmony with the earlier ones cited and to be easily distinguishable from Bank v. Goodman, 109 Pa. 422, and Pepperday v. Bank, 183 Pa. 519.

Measured by the principles enunciated in the language we have quoted the defense set up in this case must fail. It has not been shown that the plaintiff was guilty of any act of negligence or breach of duty nor that the defendant was misled to his injury by any act or omission upon its part. The defendant, after being duly warned of the possible risk he assumed, deliberately entered into the obligation of an indorser and the plaintiff, on the strength of that indorsement, gave him the money he requested. We think, therefore, the learned trial court was right in directing a verdict for the plaintiff and entering judgment thereon. The assignments of error are dismissed.

Judgment affirmed.