JULIUS ANDREWS *vs.* HENRY C. SIBLEY, & others.

Suffolk.    November 30, 1914. — December 31, 1914.

Present: RUGG, C. J., BRALEY, SHELDON, DE COURCY, & CROSBY, JJ.

*Bills and Notes,* Material alteration. *Equity Jurisdiction,* Unjust enrichment.
*Contract,* Implied: common counts.

In a suit in equity against an individual defendant and an insurance company seeking to recover the amount of a certain promissory note which was made by the individual defendant payable to the defendant insurance company, and, after a forged alteration of the payee's name by a fraudulent agent of the insurance company, was sold by such agent to the plaintiff, under R. L. c. 73, § 141, there can be no recovery on the note against the individual defendant because the alteration was a material one, and there can be no recovery on the altered note "according to its original tenor," because such a restoration would make it payable to the insurance company, and in the present case that company could not be compelled to enforce the note as trustee for the plaintiff, because it appeared that the original note never was delivered to that company and that the fraudulent agent had no authority to receive the note in its behalf.

In a suit in equity seeking to recover the amount of a certain promissory note which the defendant made payable to an insurance company, intending to pay certain premiums on policies held by him, and which, after a forged alteration of the payee's name by a fraudulent agent of the insurance company, had been sold by such agent to the plaintiff either for cash or for notes of the agent, it appeared that, some weeks after the sale of the altered note to the plaintiff, the fraudulent agent, who wished to obtain possession of the defendant's policies, in rendering an account to the insurance company charged himself with the receipt of the money for the premiums which the defendant thought he had paid with the note and sent a check to the company for the balance shown by the account to be due from him, but it did not appear what this balance was or whether it amounted to as much as the premiums and it was not shown that any money which was paid by the plaintiff for the note, if he paid any money at all for it and did not merely surrender certain notes of the fraudulent agent, was used by the fraudulent agent to pay the defendant's premiums to the insurance company. *Held,* that the plaintiff had failed to prove that money wrongfully obtained from him had been used to pay debts of the defendant and so could ask for no relief on that ground.

BILL IN EQUITY, filed, as substituted, in the Superior Court on November 5, 1913, to recover the amount of a certain promissory note made by the defendant Sibley for $1,159.20 with interest thereon at the rate of five per cent per annum from September 7, 1912, which note was purchased for value and in good faith by the plaintiff from one Williams after it had been altered fraudulently by him, with a prayer in the alternative that the note might be reformed and restored to its original condition and that the defendant Sibley might be ordered to pay the amount of the note to the defendant Connecticut Mutual Life Insurance Company as trustee for the plaintiff, and that the defendant insurance company might be ordered upon receiving the amount of the note to pay it to the plaintiff, and with prayers for other and further relief.

In the Superior Court the case was submitted to *Jenney,* J., upon the following agreed statement of facts:

On and before September 8, 1912, the defendant Sibley was the owner of two life insurance policies issued to him upon his life by the defendant insurance company. These policies were in the form known as fifteen payment life policies, that is to say, Sibley was required by the terms of the policies to pay annual premiums thereon in fifteen successive years provided he should live so long but no premium thereafter, and the policies were payable at his death. Each policy was for the sum of $10,000 and the annual

premiums on both were payable on September 8 in each year. The first annual premiums on the policies were paid by Sibley on September 8, 1899, and the succeeding annual premiums falling due on September 8 of each year up to and including the year 1911 also were paid by Sibley. The amount of the annual premiums payable on both policies on September 8, 1912, after deducting certain dividends to which Sibley was entitled under the provisions of the policies, was $1,159.20.

Shortly before September 8, 1912, the defendant Sibley, wishing to arrange a premium loan for the premiums falling due on that date, that is to say, to give the defendant insurance company his note for the amount of the premiums instead of paying them in cash, called upon George E. Williams, who was then the general agent in Boston of the insurance company, and stated his wishes in this respect. Williams represented to Sibley that he could arrange the loan with the company and Sibley authorized him to do so. Thereafter, in accordance with instructions received from Williams, the defendant Sibley signed as maker a promissory note for $1,159.20 dated September 7, 1912, and payable with interest at the rate of five per cent per annum one year from date to the order of the defendant insurance company, and likewise signed an assignment to the insurance company of his interest in the insurance policies as collateral security for the note. This note and assignment together with the insurance policies then were delivered by the defendant Sibley to Williams on or shortly before September 7, 1912.

Williams was the duly accredited general agent of the company in the city of Boston, and when a premium became due from an insured in Boston or vicinity, a so called premium receipt or acknowledgment of the payment of the premium was sent in advance to Williams and was delivered by him to the insured upon payment of the premium, and Williams accounted to the company for such payments. During 1912 the company was accustomed to lend money to its policy holders not exceeding the value of their respective policies upon the security of the policies, taking from the policy holder in each case a signed application for the loan and an instrument not in form or substance a promissory note, acknowledging the receipt of the loan and assigning to the company the policy as security therefor. These documents

always were prepared by the officers of the company at its home office and the preparation of them never was entrusted to any agents of the company. The authority of the general agent was limited to transmitting to the policy holder the documents so prepared at the home office for his signature, sending them when executed to the home office and transmitting to the policy holder the proceeds of the loan in the form of a draft payable jointly to all parties interested in the policy. Williams had no authority to receive the note of Sibley in behalf of the company, but Sibley believed the representations of Williams that he did have such authority and delivered the note to Williams for the sole purpose of delivery by him to the company. When Sibley delivered the note to Williams, Williams delivered to him the premium receipt for the premiums due September 8, 1912, on the policies.

Williams never delivered the note to the company and never informed the company that the note had been given to him by Sibley. On the other hand, he retained the note in his possession until it was disposed of by him as stated below, and on October 20, 1912, he reported to the company that on October 9, 1912, Sibley had paid the premiums in cash. At the time of making this report Williams also rendered to the company an account in which he charged himself with certain sums collected by him for the company and with the amount of the Sibley premiums as though they had been paid to him in cash and credited himself with certain amounts due him for expenses and commissions and sent to the company a check for the balance due as shown by the account.

Williams never delivered to the company the insurance policies or the assignment thereof which Sibley delivered to him as above stated and never informed the company that he had received them from Sibley. The assignment remained in the possession of Williams until his death and thereafter remained in the possession of the administrators of his estate. The policies remained in the possession of Williams until he disposed of them as stated below.

At some time shortly after September 7, 1912, Williams, still having in his possession the note actually signed by Sibley to the order of the defendant insurance company, altered the note by eradicating with chemicals or otherwise erasing the name of the company as payee and inserting in place thereof his own name,

George E. Williams. After this alteration had taken place and at some time during the month of September, 1912, Williams negotiated the note by indorsement and delivery to the plaintiff and the plaintiff gave to Williams therefor full and valuable consideration either in cash or by surrendering other notes then held by the plaintiff and then due and payable by Williams. The acts of Williams in altering the note as above stated and negotiating it to the plaintiff were all done without the knowledge, consent or authority of the defendant Sibley or of the defendant insurance company. The plaintiff, however, when he took the note, had no notice that it had been altered as above stated but honestly believed that it had been signed by Sibley in the form in which it was when the plaintiff received it.

At the maturity of the altered note the defendant Sibley refused to pay it or the amount thereof to the plaintiff and never has paid the amount of the note or any part thereof to the plaintiff or to any other person.

Williams died on July 28, 1913.

Sibley paid in cash the annual premiums due September 8, 1913, on the Sibley policies and each became thereupon a fully paid policy. Each of the policies had during the thirty days following September 8, 1914, a cash surrender value of $7,730.

The following paragraph was agreed upon if it was admissible against the objection of the defendant Sibley:

"When Williams negotiated the note to the plaintiff he told the plaintiff that Sibley was a policy holder of the defendant company and that Sibley gave him the note to raise money thereon in order to pay a premium then due."

The following facts might also be taken to have been proved by the defendant Sibley if they were admissible in evidence against the objection of the plaintiff: At some time after October 20, 1912, Williams, being in possession of the policies belonging to the defendant Sibley, forged Sibley's name to a promissory note purporting to be made by Sibley to the order of Williams for the amount of $10,000 and likewise to a document purporting to be an assignment of the policies from Sibley to Williams as collateral security for such $10,000 note and negotiated this forged note by indorsement and delivery to a person whose identity was not material and received from that person

therefor a substantial sum of money. At the same time Williams transferred and delivered to such person the policies and the forged assignment thereof. The facts stated in this paragraph were not considered material by the judge in ordering the decree as stated below.

The judge ordered that the bill be dismissed with costs so far as the defendant Sibley and the Connecticut Mutual Life Insurance Company were concerned. Later by order of the judge a final decree was entered that the bill be dismissed as to all the defendants, and that the defendant Sibley recover against the plaintiff $19.48 as costs. The plaintiff appealed.

*P. Rubenstein,* for the plaintiff.

*H. W. Brown,* for the defendant Sibley.

DE COURCY, J. It appears from the agreed statement of facts that the promissory note which the defendant Sibley delivered to George E. Williams was payable to the defendant insurance company one year from date, and was for the amount of the premiums due September 8, 1912, on Sibley's insurance policies. Shortly afterwards Williams altered the note by erasing the name of the insurance company as payee and inserting his own in place thereof. After this alteration and during the month of September, he negotiated the note by indorsement and delivery to the plaintiff, who now seeks to recover the amount thereof.

1. The plaintiff cannot recover from Sibley on the note. It is conceded that the unauthorized change of the payee's name was a material alteration. The note was thereby avoided as against Sibley, by § 141 of the negotiable instruments act, R. L. c. 73. The last sentence of that section, allowing a holder in due course to enforce payment of an altered note "according to its original tenor," even if applicable, cannot avail the plaintiff, as such a restoration would make the note payable to the order of the defendant insurance company, which never has indorsed it. The suggestion that the plaintiff might recover in the insurance company's name, or that the company might be compelled to enforce it as trustee for the plaintiff, loses sight of the facts that the original note never was delivered to the company; that Williams had no authority to receive the note in its behalf, that all his dealings with the instrument were without its knowledge, con-

sent or authority; and that consequently the company itself could not recover upon the note even if it were reformed and restored to its original tenor.

The further contention that Sibley authorized Williams to borrow money with which to pay premiums on the insurance policies, and consequently is bound by the acts of Williams under the general doctrines of agency, finds no support in the agreed facts.

2. It is urged that Sibley should be compelled to pay the plaintiff in equity and good conscience. The plaintiff argues that Williams, if he were alive, could not recover the money, because he was an officious volunteer in paying the premiums. Assuming that to be true, it is equally true that the plaintiff himself never was requested by Sibley to confer any benefit upon him. *Foote* v. *Cotting,* 195 Mass. 55. Further, it does not appear as matter of fact that the plaintiff did confer a benefit upon Sibley, on which a quasi-contractual claim for money had and received might be based. So far as the agreed facts disclose, what the plaintiff gave for the altered Sibley note was not money but other notes of Williams, which were held by him and then were due and payable. And, even assuming that some cash was paid by the plaintiff, he does not show that it was used by Williams to pay Sibley's premiums to the insurance company. It was some weeks afterwards that Williams, in settling with the company his accounts for collections, expenses and commissions, charged himself with the receipt of these premiums, and sent a check for the balance due as shown by the account. What that balance was does not appear, nor whether it amounted to as much as these premiums. On the facts disclosed it is impossible to say that money of the plaintiff actually was used to pay the company for the premiums owed by Sibley. In short, he fails to prove that money wrongfully obtained from him has been used to pay the debts of the defendant Sibley, and the principle on which equitable relief was granted in cases like *Newell* v. *Hadley,* 206 Mass. 335, and *Bannatyne* v. *MacIver,* [1906] 1 K. B. 103, is not applicable. The difficulty here is more than a mere absence of technical proof. The scheme of Williams, disclosed later, to secure a much larger sum by assigning Sibley's policies and forging his name to a note, suggests that in order to retain possession

of the policies for a year Williams was compelled to pay these premiums, regardless of whether he obtained money from the plaintiff on the altered note.

It is urged finally that unless the plaintiff is allowed relief the result will be that he is without remedy, and that Sibley holds the money without any consideration moving from him. As to the former, he still has his remedy against the estate of Williams. Sibley never was liable on the note, notwithstanding the plaintiff's mistaken belief to the contrary. And no relation of cause and effect is shown between the plaintiff's loss and Sibley's gain.

The question is not now before us as to Sibley's liability to reimburse the Williams estate. Nor is it settled that some other creditor of Williams has not a real equity in his favor, based on the use of his money, wrongfully taken, to pay his premiums. The fraudulent transaction here disclosed is but one of many in which Williams was involved. See *Herman* v. *Connecticut Mutual Life Ins. Co.* 218 Mass. 181. In any event the plaintiff must stand upon his own rights and show affirmatively that he has an equitable right to be paid by Sibley; and this he has failed to establish.

*Decree affirmed.*