[S. F. No. 14149. In Bank.—October 26, 1931.]

WELLS FARGO BANK & UNION TRUST COMPANY (a Corporation), Appellant, v. BANK OF ITALY (a Corporation) et al., Respondents.

Heller, Ehrman, White & McAuliffe and Lloyd W. Dinkelspiel for Appellant.

Louis Ferrari, J. J. Posner and C. H. White for Respondents.

WASTE, C. J.—The plaintiff bank, as drawee, seeks to recover money paid to the defendant bank, a holder in due course, on a check certified by plaintiff in which the name of the payee had been altered prior to certification, and which check had been indorsed and negotiated by the substituted payee. Under the provisions of section 3143 of the Civil Code (sec. 62, N. I. L.), "The acceptor by accepting the instrument engages that he will pay it according to the tenor of his acceptance and admits (1) the existence of the drawer, the genuineness of his signature, and his capacity and authority to draw the instrument; and (2) the existence of the payee and his then capacity to endorse." The sole question involved in this case is whether an acceptor or certifier (certification being the equivalent of acceptance under sec. 3265c, Civ. Code) is liable on his acceptance or certification, according to the tenor of the instrument as originally drawn or as of the time of his acceptance or certification. In an exhaustive and well-reasoned opinion, the District Court of Appeal, First Appellate District, Division One, affirmed the judgment of the court below and held that under the provisions

of section 3143, *supra*, an acceptor or certifier of a negotiable instrument is liable to a holder in due course according to the tenor of the instrument at the time of acceptance or certification. The case presents a point of first impression in this state, and for this reason we were prompted to take over the cause upon petition for hearing in order that we might more fully examine into the question. Our research and examination of the authorities and various legal periodicals satisfies us as to the correctness of the disposition of the matter by the District Court of Appeal, and, with such observations as will hereinafter appear, we hereby adopt its opinion as and for the decision of this court. It reads:

"This action was brought to recover a sum paid upon an altered check which the drawee certified and paid by mistake.

"On August 24, 1923, the McCormick Steamship Company, a depositor of the Wells Fargo Nevada National Bank of San Francisco, which was plaintiff's predecessor in interest, drew its check upon that bank for the sum of $1,425.88, payable to the order of Albert Meyer & Company. Subsequently, without the consent of the drawer, the name of the payee was erased therefrom and the name of Harry W. Behling substituted. The alteration was made with such skill that it could not be detected and it was not detected by the drawee or by either of the defendants. The check was certified by the drawee and there was afterwards endorsed thereon the name of Harry W. Behling. This endorsement was not made by the original payee but by some person unknown. Thereafter the check was endorsed by defendant Popkin and presented to defendant Bank of Italy, which paid the amount thereof. The latter thereafter transmitted it in the usual course through the clearing house to the drawee which in turn credited or paid the amount of the check to the defendant bank. On or about September 1, 1923, this being the regular date upon which monthly accounts were rendered, the McCormick Steamship Company received from the drawee a statement showing that this check, among others, had been paid but did not receive the cancelled check. It was the custom of the drawee to retain all certified checks and forward to its depositors slips in lieu thereof which indicated by number the checks cer-

tified and paid, but not the names of the payees. The steamship company did not discover the alteration until an inquiry was made by the original payee several months after the check had been paid. It notified the drawee of the facts about February 20, 1924, and on the 27th of that month the latter notified the defendants and demanded repayment of the amount of the check.

"The facts attending the certification and endorsement of the check, according to the testimony of defendant Popkin, were as follows: Harry W. Behling was at the time in the employ of the steamship company, and Popkin was the manager of a retail clothing concern in San Francisco. They had been acquainted for some years. On August 24, 1923, Behling purchased certain articles of clothing from Popkin and in the course of the transaction stated that he had a check drawn upon the Wells Fargo Bank and requested Popkin to identify him. The two went to the drawee bank, where Popkin introduced Behling and, by his statements and business card, established his own identity. The check was then presented and certified by the drawee, but, according to his testimony, Popkin did not endorse or examine the check at the time. Behling then requested payment, but it was suggested by an officer of the drawee bank that Popkin being a depositor of the defendant bank, the check should be cashed by the latter. Later at the banking house of defendant bank Behling was again identified by Popkin, who at this time at the request of the bank endorsed the check and the same was paid to Behling. The endorsement of the name of Behling preceded that of Popkin, but by whom it was made does not appear. Upon these facts judgment was entered for the defendant. The plaintiff, which has appealed, contends that certain findings are unsupported and that the court erred in its conclusions that the drawee by its certification admitted the genuineness of the body of the check, that the payee named therein had capacity to endorse and that the defendant bank was a holder in due course.

"A check is a bill of exchange (Civ. Code, sec. 3265a) and where it is certified by a bank on which it is drawn the certification is equivalent to an acceptance (Civ. Code, sec. 3265c). Prior to the enactment of the Uniform Negotiable Instruments Act by the California Legislature

in 1917 (Stats. 1917, p. 1531) the code provided that 'the acceptance of a bill of exchange admits the signature of the drawer, but does not admit the signature of any endorser to be genuine'. (Civ. Code 1915, sec. 3199.) According to the new act, Civil Code, section 3143 (which corresponds to section 62 of the negotiable instruments law as recommended by the commissioners for providing uniformity of legislation) 'The acceptor by accepting the instrument engages that he will pay it according to the tenor of his acceptance and admits (1) the existence of the drawer, the genuineness of his signature, and his capacity and authority to draw the instrument; and (2) the existence of the payee and his then capacity to endorse.' Before the adoption of the negotiable instruments law it was held in the majority of cases that the acceptor of a check warranted only that the signature of the drawer was genuine and that he had sufficient funds to pay the check and it was therefore held that a bank which certified a check after it had been fraudulently altered as to the amount or the name of the payee and afterwards paid it could, other things being equal, recover the amount even against a *bona fide* purchaser. (*Metropolitan Nat. Bank* v. *Merchants Nat. Bank*, 182 Ill. 367 [74 Am. St. Rep. 180, 55 N. E. 360]; *Parke* v. *Roser*, 67 Ind. 500 [33 Am. Rep. 102]; *Espy* v. *First Nat. Bank of Cincinnati*, 18 Wall. (U. S.) 604 [21 L. Ed. 947]; *Bank of Commerce* v. *Union Bank*, 3 N. Y. 230; *Marine Nat. Bank* v. *National City Bank*, 59 N. Y. 67 [17 Am. Rep. 305]; *White* v. *Continental*, 64 N. Y. 316 [21 Am. Rep. 612]; *Security Bank* v. *National Bank*, 67 N. Y. 458 [23 Am. Rep. 129]; *City Bank* v. *First Nat. Bank*, 45 Tex. 203.) And the same rule has been followed by the appellate division of the supreme court of New York since the adoption of the law, namely, in the case of *National Reserve Bank* v. *Corn Exchange Bank*, 171 App. Div. 195 [157 N. Y. Supp. 316, 318], where it appeared that the plaintiff by mistake certified a raised check which the defendant afterwards acquired for value and collected. In affirming a judgment recovered by the plaintiff the court, citing the negotiable instruments law of New York, which contains a provision identical with section 3143 of the California Civil Code, said: 'It is settled by statute, as well as by authority, that a bank in certifying a check in the usual form does no more than to affirm the genuineness of the signature of the drawer, and

that he has funds on deposit to meet it, and that the funds will not be permitted to be withdrawn, to the prejudice of the holder of the check. But a bank, by its certification does not warrant the genuineness of the body of the check.' The courts of Colorado and Missouri, without discussing the effect of section 62 of the negotiable instruments law, have also continued to follow the common law rule. (*Interstate Trust Co.* v. *United States Nat. Bank*, 67 Colo. 6 [10 A. L. R. 705, 185 Pac. 260]; *McClendon* v. *Bank of Advance*, 188 Mo. App. 417 [174 S. W. 203]; *Central Nat. Bank* v. *F. W. Drosten etc. Co.*, 203 Mo. App. 646 [220 S. W. 511].) The interpretation given this section by the supreme court of Illinois is contrary, however, to the conclusions reached in the above cases. In *National City Bank of Chicago* v. *National Bank, etc.*, 300 Ill. 103 [22 A. L. R. 1153, 132 N. E. 832], a bank of St. Louis drew a draft upon the plaintiff payable to a Pittsburgh concern. The draft was stolen from the mails by one Manning, who erased the name of the payee named in the draft, inserted his own and endorsed the instrument. He tendered the draft in payment for certain jewelry which he purchased and its certification having been secured the jewelry was delivered to him. The jeweler deposited the draft with defendant bank, to which it was paid through the clearing house. The drawee having discovered the alteration sought to recover the amount paid. A recovery was had, and the Supreme Court, in reversing the judgment, said: 'In its last analysis the question presented for decision is the liability of the acceptor of a negotiable instrument under section 62 of the Negotiable Instruments Law. . . . Section 62 . . . declares that "the acceptor by accepting the instrument engages that he will pay the instrument which he has accepted according to the tenor of his acceptance, and admits the existence of the payee and his then capacity to endorse". The instrument which appellee has accepted was payable "to the order of Andrew H. Manning". By its acceptance it admitted that Andrew H. Manning was in existence and that Andrew H. Manning at the time of acceptance was not suffering any legal disability which would affect his ability to pass title to the instrument accepted by means of endorsement. According to the plain language of this section appellee by its general acceptance bound itself to

pay a draft for $629.80, payable to the order of Andrew H. Manning. After the draft was accepted by appellee the drawer was discharged from liability thereon. When appellant took the draft it was complete and regular upon its face. It had been duly accepted by the drawee. It was taken in good faith and for value, and appellant then had no notice of any infirmity in the instrument or defect in the title of the person negotiating it, and appellant was therefore a holder in due course. It relied upon the general acceptance of appellee, and under the Negotiable Instruments Law was protected by it. This construction of section 62 is in accordance with that sound principle which declares that where one of two innocent parties must suffer a loss the law will leave the loss where it finds it.' The common-law rule had been previously followed in *First Nat. Bank, etc., v. Northwestern Nat. Bank, etc.,* 152 Ill. 296 [43 Am. St. Rep. 247, 26 L. R. A. 289, 38 N. E. 739], and *Metropolitan Nat. Bank, etc., v. Merchants' Nat. Bank, etc.,* 182 Ill. 367 [74 Am. St. Rep. 180, 55 N. E. 360], which were decided previous to the adoption of the Negotiable Instruments Law. In *State Bank, etc., v. Mid-City Trust etc. Bank,* 295 Ill. 599 [12 A. L. R. 989, 129 N. E. 498], decided after the adoption of the law, the payee's name was forged as an endorsement upon a check after its certification and the same was paid by the acceptor to the endorsee. The acceptor sought to recover upon the theory that it was liable to the real payee for the amount of the check. It was held that the check had never been delivered to the real payee and had never come into his possession, and that he had acquired no right by reason of the acceptance. Dean Ames contended before the Negotiable Instruments Law was adopted that upon principle an alteration before acceptance of any of the terms of a genuine bill should not affect the liability of the acceptor to an innocent holder. (4 Harvard Law Review, p. 297.) The editors of the American Law Reports Annotated volume 22, page 1162, express the view that the conclusion reached in the Illinois case is more in accord with the language of the Negotiable Instruments Law than the other cases cited and as said by Professor Brannan in his work on the Negotiable Instruments Law, fourth edition, at page 567: 'It is difficult to see how he (the acceptor) can escape liability if any meaning is to be given to the words ''engages

that he will pay according to the tenor of his acceptance''. The tenor of the acceptance is determined by the terms of the bill as it is when the drawee accepts and that is a bill for the raised amount. That is the bill he accepted and no other, and according to its tenor he has engaged that he will pay it.' And where, as in the present case, an endorsee without notice has given value upon the faith of a certification and the instrument has been paid by the drawee the result reached in the Illinois case not only makes for the usefulness and currency of negotiable paper, but, as held in that decision, is in accord with the principle that where the parties are equally innocent the law will leave the loss where they have placed it. Appellant cites numerous decisions holding that money paid by the acceptor of a check upon the forged endorsement of the payee named therein can be recovered. (*Wellington Nat. Bank* v. *Robbins,* 71 Kan. 748 [114 Am. St. Rep. 523, 81 Pac. 487] ; *Andrews* v. *Sibley,* 220 Mass. 10 [107 N. E. 395] ; *National Union Fire Ins. Co.* v. *Mellon Nat. Bank,* 276 Pa. 212 [119 Atl. 910] ; *Union Tool Co.* v. *Farmers etc. Bank of Los Angeles,* 192 Cal. 40 [28 A. L. R. 1417, 218 Pac. 424] ; *American Exchange etc. Bank* v. *Yorkville Bank, etc.,* 122 Misc. Rep. 616 [204 N. Y. Supp. 621] ; *Missouri etc. Trust Co.* v. *St. Louis Nat. Bank,* 154 Mo. App. 89 [133 S. W. 357] ; *Gasper* v. *Security Nat. Bank,* 109 Neb. 495 [191 N. W. 654] ; *American Express Co.* v. *People's Sav. Bank,* 192 Iowa, 366 [181 N. W. 701] ; *Charleston etc. Co.* v. *Exchange etc. Co.,* 129 S. C. 290 [123 S. E. 830].) The same rule applies to checks altered as to the amount or the name of the payee after certification. (*Ozark Sav. Bank* v. *Bank of Bradleyville,* (Mo. App.) 204 S. W. 570; *National Bank* v. *National Mechanics Bank,* 55 N. Y. 211 [14 Am. Rep. 232] ; *Rapp* v. *National Security Bank,* 136 Pa. 426 [20 Atl. 508].) *National Union Fire Ins. Co.* v. *Mellon Nat. Bank, supra,* is also cited in support of appellant's contention that the acceptor does not, by his acceptance, admit the genuineness of the body of the draft. This action was by the insurance company against the bank to recover the amount paid by the latter and charged to the former's account on drafts on which the payees' endorsements were forged. The drafts were drawn on the insurance company by its agents and were payable to policyholders for supposed fire losses. The drafts came into the possession of an

164

employee of the agent, who forged the names of the payees upon the back thereof, deposited the same in defendant bank, which forwarded them to the insurance company for acceptance. They were accepted without investigation as to the genuineness of the payees' signatures, were paid by the bank and the amounts charged to plaintiff's account. A judgment for plaintiff was affirmed on appeal, it being held that by acceptance the plaintiff did not admit the genuineness of the signatures of the payees. This was the question decided and the case is not authority for the claim that an acceptance is not an admission of the genuineness of the body of the draft. In many of the cases cited by appellant a recovery was allowed upon the theory that the party to whom the drawee paid the check, having endorsed the same, thereby warranted the genuineness of prior endorsements.

But as has been pointed out (Brannan, The Negotiable Instruments Law, 4th ed., p. 618), the presentation of a check to a drawee for payment is not a negotiation and involves no warranties as the drawee is not a holder in due course under section 52 of the Negotiable Instruments Law (Cal. Civ. Code, sec. 3133), nor a holder as defined in section 191 thereof (Cal. Civ. Code, sec. 3266). And as held in the following cases, the warranties of a general endorser as provided by section 66 of that law (Cal. Civ. Code, sec. 3147) are based upon a transfer of title and run only to holders in due course; consequently a drawee who has paid the instrument is not a transferee of title as the last holder's endorsement does not transfer the check but converts what was a check into a voucher. (*South Boston Trust Co.* v. *Levin,* 249 Mass. 45 [143 N. E. 816, 817]; *National Bank, etc.,* v. *First Nat. Bank, etc.,* 141 Mo. App. 719 [125 S. W. 513]; *Woodward* v. *Savings & Trust Co.,* 178 N. C. 184 [5 A. L. R. 1561, 100 S. E. 304]; *Bank of Commerce* v. *Seattle Nat. Bank,* 109 Wash. 312 [187 Pac. 342]; *American Hominy Co.* v. *Milliken Nat. Bank,* (D. C.) 273 Fed. 550; *Figuers* v. *Fly,* 137 Tenn. 358 [193 S. W. 117].)

The liability to refund rests upon the *quasi*-contractual duty to return money received under mistake and not upon warranty, nor is an action therefor founded upon the instrument which the drawee has paid. (*Bank of Commerce* v. *Union Bank,* 3 Comst. (N. Y.) 230; *Redington* v. *Woods,* 45 Cal. 406, 429 [13 Am. Rep. 190]; Brannan, The Negotiable

Instruments Law, 4th ed., p. 619.) ▮ The same rules apply to the claim against defendant Popkin. In order to establish any obligation on his part to reimburse the plaintiff it would be necessary to allege and prove that he received a benefit from the plaintiff (Woodward, Quasi-Contracts, sec. 7, p. 9; Keener, Quasi-Contracts, p. 24), and the testimony shows that any benefit he derived from the transaction was received either from his co-defendant or from Behling.

▮ "We think the construction placed upon the section by the Illinois court is correct and that it was not the legislative intent that the obligation of the acceptor should be limited to the tenor of the instrument as drawn by the maker, as was the rule at common law, but that it should be enforceable in favor of a holder in due course against the acceptor according to its tenor at the time of its acceptance or certification."

The foregoing opinion and the Illinois decision which it follows give effect to the literal words of the Negotiable Instruments Law. As stated in the Illinois case, *supra,* page 107: "The court must take the act as it is written and should give to the words their natural and common meaning . . . if the language of the act conflicts with statutes or decisions in force before its enactment the courts should not give the act a strained construction in order to make it harmonize with earlier statutes or decisions." The wording of the act suggests that a change in the common law was intended. A careful reading thereof, independent of any common-law influence, requires that the words "according to the tenor of his acceptance" be construed as referring to the instrument as it was at the time it came into the hands of the acceptor for acceptance, for he accepts no other instrument than the one presented to him—the altered form—and it alone he engages to pay. This conclusion is in harmony with the law of England and the continental countries (14 Harvard Law Review, 241, 243; *Langton* v. *Lazarus,* (1839, Exch.) 5 M. & W. 628; 1 Pardessus, Cours de Droit Commercial, 6th ed., 1856, 545). It makes for the usefulness and currency of negotiable paper (31 Yale Law Journal, 522, 527) without seriously endangering accepted banking practices, for banking institutions can readily protect themselves against liability on altered instruments either by qualifying their acceptance or certification or by relying on

forgery insurance and special paper which will make alterations obvious. All of the arguments advanced against the conclusion herein announced seem highly technical in the face of the practical facts that the drawee bank has authenticated an instrument in a certain form, and that commercial policy favors the protection of anyone who, in due course, changes his position on the faith of that authentication.

The judgment is affirmed.

Richards, J., Shenk, J., Curtis, J., and Seawell, J., concurred.